386 A.2d 37

**COMMONWEALTH of Pennsylvania**

v.

**Robert REYNOLDS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1977.

Decided April 28, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

■ This appeal is taken from appellant's conviction by a jury of simple assault[1] and from the denial of his post verdict motions for a new trial and in arrest of judgment. Appellant first contends that he is entitled to be discharged because of the Commonwealth's alleged violation of Pennsylvania Rule of Criminal Procedure 6013(g).[2] We deem this issue waived for failure to file a written petition to dismiss prior to trial as required by Rule 1100(f).[3] *Commonwealth v. Blanchard,* 251 Pa.Super. 424, 380 A.2d 853 (1977). We must therefore consider appellant's grounds for a new trial. Since it is clear that the prosecutor was guilty of misconduct which prevented the rendition of an objective verdict by the jury, we reverse and order a new trial without reaching the remaining assignments of error.

Appellant, an inmate of the House of Correction in Philadelphia at the time of this incident, was charged and convicted of simple assault upon Jeffrey Harris, a guard at the prison. A fight between the two erupted on the evening of October 29, 1975, apparently because appellant persisted in sitting or leaning on the guard's desk despite several requests to refrain from doing so. At trial the testimony of

1. 18 C.P.S.A. § 2701.

2. Appellant was tried and convicted in the Municipal Court of Philadelphia County and sentenced to a prison term of 30 days. He filed an appeal in the Court of Common Pleas on February 10, 1976. Pa.R.Crim.P. 6013(g) provides that, "A trial *de novo* in the Court of Common Pleas shall commence within a period of ninety (90) days after the notice of appeal from the Municipal Court is filed. In all other respects the provisions of Rule 1100 shall apply . . .."

3. Appellant's trial counsel made an oral motion for discharge under Rule 1100 at the time of trial. The question of the propriety of a *nunc pro tunc* extension previously granted to the Commonwealth was also raised at this time. There was much confusion between the judge and defense counsel concerning whether the latter issue could be raised in post-trial motions. Nevertheless, the failure to file a written petition for discharge *before* trial constituted a waiver.

Harris, and that of the defense witnesses differed greatly concerning which of the two combatants threw the first punch. The jury resolved this credibility question in favor of the Commonwealth.

Appellant contends that various remarks of the Assistant District Attorney, particularly during his closing argument, statement, were so inflammatory as to warrant a new trial. It is, of course, true that if the cumulative effect of improper statements made by the prosecuting attorney so prejudices the jury as to prevent a fair trial, reversible error exists. *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). The attorney for the Commonwealth admitted in chambers following his closing, that he had at various times referred to appellant and one defense witness as "robbers" and "rapists." N.T. at 501–02. He attempted to justify this by saying: "How inflammatory is that of calling a person what he is? It's identical of calling a snake or a vicious animal or a homicidal maniac. . . . " N.T. at 502. He also admitted asking the jury how they would like to step into an alley with appellant or his principal witness, but sought to explain this as a comment on the *credibility* of these witnesses. N.T. at 506. In addition, the prosecutor, allegedly in response to defense counsel's closing argument, compared the rights of "robbers" and "rapists" to those of the guard who was involved in the altercation. N.T. at 504–05. Defense counsel objected to each of these remarks at the time they were made and moved for a mistrial as required by Pa.R.Crim.P. 1118(b).[4]

4. A defendant may of course waive his objections to an improper closing argument by failing to raise them at trial. *Commonwealth v. Gilman,* 470 Pa. 179, 186, 368 A.2d 253, 256 (1977). Particularly when, as here, the closing is not recorded, there is a need to require an objection during the argument so that the remarks may be placed in the record at or about the time they were made. *Commonwealth v. Adkins,* 468 Pa. 465, 472, 364 A.2d 287, 291 (1976). Although in the instant case the offending remarks were not placed on the record until after argument had been completed, specific objections were made during the argument. Lower Court Opinion at 2. "if a defendant raises an objection to the impropriety of a prosecutor's summation in time for curative instructions, the issue is not waived." *Commonwealth v. Gilman,* 470 Pa. 179, 186, 368 A.2d 253, 256

The prosecutor's justifications for the use of epithets and inflammatory innuendos evidence a serious misconception of the prosecutorial function.[5] Section 5.8(c) of the ABA Project on Standards of Criminal Justice, Standards Relating to the Prosecution and Defense Function (Approved Draft 1971), states: "The prosecutor should not use arguments calculated to inflame the passions of the jury." Since "[t]he prosecutor is both an administrator of justice and an advocate," he must be circumspect in the performance of his functions. Standards Relating to the Prosecution Function § 1.1(b) (Approved Draft 1971). It is his duty to seek justice, not merely convictions. *Id.*, § 1.1(c). "[T]he conduct of the prosecutor at closing argument is circumscribed by the concern for the right of a defendant to a fair and impartial trial." *Commonwealth v. Cherry,* 474 Pa. 295, 301, 378 A.2d 800, 803 (1977).

" 'It is no part of a district attorney's duty, and it is not his right, to stigmatize a defendant.' " *Commonwealth v. Lipscomb,* 455 Pa. 525, 528, 317 A.2d 205, 207 (1974), *quoting Commonwealth v. Capalla,* 322 Pa. 200, 204, 185 A. 203, 205 (1936). Characterization of a criminal defendant as a "robber" or "rapist" can no more be condoned than the use of epithets such as "hoodlums" and "animals." *See Common-*

(1977), *citing Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976).

The trial judge promised to give curative instructions during his charge to the jury. N.T. at 506. The judge's charge, however, included only the standard instructions on the weight to be given to arguments of counsel (i. e., not to be considered as evidence). No attempt was made to deal with the prejudicial atmosphere created by the prosecutor's summation. *See* N.T. at 513–14. It may, in any case, have been futile to attempt to erase the prejudice engendered by these remarks. *See Donnelly v. DeCristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

5. Our courts have often stated that the prosecutor enjoys an office of unusual responsibility and should never be vindictive or attempt to influence the jury by arousing their prejudices. *See, e. g., Commonwealth v. Mikesell,* 475 Pa. 589, 381 A.2d 430 (1977); *Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971); *Commonwealth v. Toney,* 439 Pa. 173, 266 A.2d 732 (1970); *Commonwealth v. Wiggins,* 231 Pa.Super. 71, 328 A.2d 520 (1974).

*wealth v. Lipscomb.* The Assistant District Attorney's closing demonstrated "a highly regrettable zeal for conviction which caused [him] to lose sight of his duty to remain objective and not to exploit the influence of his office." *Commonwealth v. Valle,* 240 Pa.Super. 411, 415, 362 A.2d 1021, 1023 (1976) (use of terms "vicious," "liar" and "Al Capone" to describe the defendant).

The prosecutor compounded the injury to appellant by asking the jury how they would like to step into an alley with appellant and his chief witness. This common reference to the allegedly violent nature of appellant and his witness cannot be explained away as an attack on their credibility. "The determination of guilt must *not* be the product of fear or vengeance but rather intellectually compelled after a disinterested, impartial and fair assessment of the testimony that has been presented." *Commonwealth v. Harvell,* 458 Pa. 406, 411, 327 A.2d 27, 30 (1974) (emphasis in original).

Defense counsel, in his closing, emphasized that appellant was entitled to the same rights as anyone else despite the fact that he was in prison at the time the offense occurred for which he was being tried. Allegedly in response to the defense argument, the Assistant District Attorney compared the guard's rights with those of "robbers" and "rapists." In our system of justice we do not engage in an evaluation of the comparative rights of the defendant and the victim. A criminal defendant's rights, including the due process right to a fair trial, remain constant and are defined by the United States Constitution and that of this Commonwealth. The interjection of extraneous and irrelevant arguments calling for the use of a sliding scale of rights can only inflame and prejudice the jury.

■■ In determining the effect of the prosecutor's remarks upon the jury we must consider the atmosphere at trial.[6] *Commonwealth v. Mikesell,* 475 Pa. 589, 381 A.2d 430

---

**6.** Our attempts to recreate the trial atmosphere are somewhat hampered by the lack of a complete record. The statutory right to transcription of trial proceedings, Act of May 1, 1907, P.L. 135, § 2,

(1977), *citing Commonwealth v. Dickerson,* 406 Pa. 102, 110, 176 A.2d 421, 425 (1962). The prosecutor's remarks cannot be considered harmless error if " 'there is a reasonable possibility' that the constitutional error 'might have contributed to the conviction.' " *Commonwealth v. Davis,* 452 Pa. 171, 178, 305 A.2d 715, 719 (1973), *quoting Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Commonwealth v. Gilman,* 470 Pa. 179, 192, 368 A.2d 253, 259 (1977); *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973). Stated another way, the prosecution bears the burden of proving that the error was harmless beyond a reasonable doubt. *Commonwealth v. Collins,* 462 Pa. 495, 503, 341 A.2d 492, 495 (1975). When, as here, the resolution of the ultimate issues in the case rests upon the jury's evaluation of sharply conflicting testimony, the aspersions cast upon appellant by the prosecutor cannot be considered harmless. *See Commonwealth v. Russell,* 456 Pa. 559, 565, 322 A.2d 127, 130 (1974). There is more than a "reasonable possibility" that the prejudicial atmosphere created by the prosecution contributed to appellant's conviction.

Reversed and remanded for a new trial.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, J., concurs in the result.

*as amended,* 17 P.S. § 1802, has not yet been extended to include the opening and closing arguments of counsel. *Compare* 28 U.S.C. § 753(b), which requires the reporters of the federal district courts to record *all* open-court proceedings in criminal cases.

We reject appellant's contentions that there is a *constitutional* requirement that trial proceedings be transcribed. *See United States ex rel. Luzaich v. Catalano,* D.C., 401 F.Supp. 454, 456 (1975) (federal habeas corpus proceedings); *Commonwealth v. Stewart,* 218 Pa.Super. 38, 42, 269 A.2d 381, 388 (1970). There must, however, be at least "an equivalent 'picture' of what transpired below." *Commonwealth v. Anderson,* 441 Pa. 483, 493, 272 A.2d 877, 882 (1971).