414 A.2d 686

COMMONWEALTH of Pennsylvania

v.

**Zebbie CLIFTON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 28, 1979.

Filed Nov. 16, 1979.

Hugh C. Clark, Philadelphia, for appellant.

Robert J. Casey, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

Zebbie Clifton, appellant, was tried and convicted by a jury in the Court of Common Pleas of Philadelphia of

---

* Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania, and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

murder of the first degree, aggravated robbery, conspiracy and weapons offenses. Judgment of sentence of life imprisonment was imposed on the murder conviction,[1] and this appeal followed.

■ This was Clifton's second conviction of the same charges. The first convictions were voided and set aside because of ineffective trial counsel. Prior to the second trial, during which Clifton was represented by new counsel, he moved to have the charges dismissed on the ground of double jeopardy. The trial court denied the motion and this ruling is the first assignment of error. The motion to dismiss the charges was properly denied. *Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352 (1972).

Next, Clifton argues the admission into evidence of statements given by him to police was error because the statements were obtained in violation of Pa.R.Crim.P. 130, see *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and because they were involuntarily given.

With regard to the *Futch* claim, the facts are as follows: Clifton was arrested in New York City on a fugitive warrant. On October 2, 1973 at 10:20 a. m., he waived extradition and was taken into custody by Philadelphia police. He arrived at the Police Administration Building in Philadelphia at 12:15 p. m. on the same day. At 12:40 p. m., he was advised of his constitutional rights which he indicated he understood and waived. Clifton then gave a statement to police which an officer reduced to writing. The writing was completed at 2:15 p. m. and read and signed by Clifton. In this "informal statement," Clifton incriminated himself. Between 2:15 p. m. and 4:35 p. m., Clifton was taken to a men's room, given a meal and cigarettes, and left alone. At 4:35 p. m., Clifton gave a "formal statement" which was typewritten. He finished the statement, read it, and signed it at 7:00 p. m. He was arraigned at 10:00 p. m.

■ The relevant period in examining a *Futch* claim is between arrest and incrimination, *Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975); *Commonwealth v. Rowe*,

1. Sentences were not imposed on the other convictions.

459 Pa. 163, 327 A.2d 358 (1974), and, where, as here, the second statement is essentially the same as the prior statement, the time the prior statement is given governs. *Commonwealth v. Boone*, supra; *Commonwealth v. Rowe*, supra. Accordingly, the period involved instantly is two hours and twenty minutes. Further, one hour and fifty-five minutes of that period was needed to transport Clifton to the Philadelphia Police Administration Building, and, accordingly, was not unnecessary delay. *Commonwealth v. Starks*, 484 Pa. 399, 399 A.2d 353 (1979). Hence, the relevant period is a mere twenty-five minutes. Clearly, there was no violation of Pa.R.Crim.P. 130 or of *Futch. Commonwealth v. Boone*, supra.

■ With regard to the voluntariness claim, the issue, as presented, is waived. In supplemental post-verdict motions, Clifton asserted the suppression court erred in denying the motion to suppress. The post-verdict motion court reviewed the suppression court's order and expressed agreement with its findings of fact and conclusions of law with respect to voluntariness. Now Clifton seeks to argue that testimony *given at trial*, not at the suppression hearing, by a psychologist established he was mentally incapable of knowingly and intelligently waiving his rights prior to giving the statements to police. This particular issue was not raised in post-verdict motions nor considered by the court, and, accordingly, it is waived. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

Next, Clifton argues the trial court erred "when it repeatedly overruled [his] objection to irrelevant and prejudicial testimony of the deceased's nephew, Arthur S. Salus, Esquire." A recount of the relevant testimony is necessary:

Salus testified that he knew the victim, Dr. Fellman since he was a child and that he was a second or third cousin of the victim. An objection was entered and overruled to a question about whether Salus knew the victim on a professional basis. Salus answered the victim took care of his, his wife's, his children's, and most of the cousins' glasses "as did his [the victim's] father and uncle before." An objection was entered and overruled to a question about how long

"the Fellman family" owned the property where the business at which the victim was killed was run. Salus answered he did not know exactly but the victim's father and uncle had run an optometry business there since "1898 or thereabouts." An objection was then entered and sustained to a question about whether the victim had served in the military. Salus then testified that he saw the victim alive and well three weeks before his death when he was getting glasses; that his physical condition at the time included several ailments which would never be cured; and, that he could work all day, but was on "complete retirement from the military as a result of a slight heart attack and of battle wounds." An objection was entered and overruled. Salus then testified that he saw the victim at the hospital on the night he was shot and at the medical examiner's and that, at the medical examiner's, the victim "looked perfectly normal except for a tremendous hold in his head between his eyes." An objection and move to strike was entered; the court struck "tremendous" only and counsel made no further request. Salus was then asked if he could identify a photograph of a gun; he responded that it was a certain type and that the victim was a collector of guns. An objection was entered and sustained. Salus then said the gun was sold as part of the estate. The court then asked if Salus could identify the photo; he did so. Salus then testified he first saw the gun at the victim's "place" and sold it with the "rest of the guns." The court instructed the estate was "not before the jury" and asked when the witness first saw the gun. Salus responded he "filed a petition with your court for reclamation of the gun after the first trial concluded." Counsel objected and moved to strike. The court sustained the objection, struck the testimony, and questioned the witness on relevant matters. Salus then concluded his direct testimony without incident.

Clifton argues all of Salus' testimony was "manifestly improper and prejudicial," citing *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

First, the most damaging statement, i. e. regarding a prior trial, was stricken. Counsel requested nor further

relief, and, hence, that remark may not now be considered as a basis for reversal. *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974). The same reasoning applies to the references to a "tremendous hold," a collector of guns, and an estate. But, Clifton seeks to avoid *Commonwealth v. Glenn*, supra, by arguing the erroneous overruling of objections entered prior to these statements being made caused this improper testimony. Clearly, if the earlier objections should have been sustained, the only possible effect overruling them could have had would be to deter objection, not requests for relief. Since those rulings did not deter objection and since counsel either pursued no relief or settled for the court striking the testimony,[2] *Commonwealth v. Glenn*, supra, must be applied instantly.

Second, the testimony to which an objection was entered but overruled and which may serve as a basis for complaint may be summarized thusly: the witness indicated a professional relationship, made reference to family service to the community, and made reference to the victim's military service. To the extent this testimony is irrelevant, we do not believe it warrants reversal.

> "Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a matter that it may reasonably be said to have deprived the defendant of a fair and impartial trial."

*Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973).

Clifton relies on *Commonwealth v. Story*, supra, in support of his position. But *Commonwealth v. Story*, supra, is inapposite because there the testimony was more inflammatory than here. In *Commonwealth v. Story*, supra, the irrelevant testimony included: the victim left a widow with a handicapped daughter; the widow was forced to work

---

2. We note the court instructed the jury at the beginning of trial to disregard any stricken testimony.

after her husband died; the victim was a police officer who had served in the military reserve and was attending college. Also photographs of the victim's family on vacation in Canada were introduced. Clearly, this evidence was more inflammatory than that involved instantly.

Finally, Clifton argues the court erred in overruling an objection entered during closing argument by the assistant district attorney. The remarks [3] about which complaint is made are those emphasized in the following from closing argument:

"Now, the Defense attorney has talked to you maybe forty-five minutes. In his remarks to you, he touched on the rights of the defendant and his rights that were protected. He went through the facts of this case and talked about a degree of fantasy in the Commonwealth's case. He mentioned that the only evidence that we had was out of the defendant's mouth. He also mentioned that the defendant was street-wise, and that he was emotionally disturbed. *I remember as I am standing talking to you this morning a statement once made to me by one of my law professors back at that time when I spent in law school, and his statement was* :
*When you have facts on your side, you argue facts.*
*When you have law on your side, you argue law.*
*When you have right on your side, you argue right.*
"*Let's talk about rights. Ladies and Gentlemen of the Jury, there is no right of anyone at anytime to strike against the public safety and welfare under any circumstances for any reason. I will submit to you, Ladies and Gentlemen, this is the issue here today. The Defense attorney talked to you in broad and general terms. At no time during his remarks did he mention probably the most*

3. Complaint is made about three other remarks made during closing argument, but no objections to those remarks were made. Accordingly, we shall not consider those. *Commonwealth v. Johnson,* 467 Pa. 146, 159 n. 12, 354 A.2d 886, 893 n. 12 (1976).

Clifton seeks to avoid this ruling as to these remarks by arguing objections would have been futile in light of the overruling of the objection indicated in the text. No authority for such a position has been cited, and we know of none.

*important thing that's before you today, and it's in the form of a right, and that right is the right to work, the right to be safe in your person, the right to be safe in your office. I would submit to you, Ladies and Gentlemen, that is what's before you.*

"MR. CLARK: That's objected to and move for a mistrial.

"THE COURT: Overruled." [Emphasis added.]

Initially, we note Clifton's statements to police indicated he shot the victim only after the victim grabbed a gun and shot at him during the course of his robbing the victim. From this evidence, defense counsel had argued that the statements negated willful, deliberate, and premeditated murder. The Commonwealth argues the remarks of the assistant district attorney were a proper response to the implication in the defense closing that the victim had no right to defend himself.

The prosecutor would certainly have had the right to argue that the statements did not necessarily negate any willful, deliberate, and premeditated killing; that murder of the first degree could be returned under the applicable statute even absent such a killing, based on felony murder; and, that the victim had a right to defend himself. But the remarks instantly went further and, at least, impliedly injected a broader issue than the guilt or innocence of Clifton in that the rights referred to were more broadly stated, than a right to self-defense. See A.B.A. Standards Relating to the Prosecution Function, § 5.8 (1971).

Still, we do not believe the remarks warrant reversal because we do not believe the unavoidable effect of the remarks prevented the jury from fairly considering the evidence. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977).

The cases relied upon by Clifton are readily distinguishable.

*Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975), involved a multitude of improper comments including: 1) a plea to let the community know citizens will not put up with

viciousness and violence; 2) a call to push for justice or push the fifth, that is, heroin; and, 3) a reference to defense witnesses as liars. Clearly, the remarks instantly do not approach those in *Commonwealth v. Collins*, infra, in either quantity or quality, i. e. in inflammatory nature.

*Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974), involved a protracted plea to fear of crime on the street including: 1) fear to walk dogs; 2) fear to go out on the street; and, 3) fear to let the accused go on the streets because he might attack a juror. Again, the comments instantly were not as inflammatory.

*Commonwealth v. Reynolds*, 254 Pa.Super. 454, 386 A.2d 37 (1978), involved: 1) references to defense witnesses as robbers and rapists; 2) a rhetorical question about whether the jurors would like to go into an alley with the accused or his principle witness; and, 3) a comparison, in response to a defense argument about an accused's rights, of the rights of guards with the rights of robbers and rapists. Clearly, while the remarks instantly may involve an element of the latter aspect of *Commonwealth v. Reynolds*, supra, the atmosphere in which the remarks were made instantly is radically different than in that case. See *Commonwealth v. Perkins*, supra; *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975).

The judgment is affirmed.