The PEOPLE of the State of
Colorado, Petitioner,

v.

Scott Elliott RAYMER, Respondent.

No. 81SC65.

Supreme Court of Colorado,
En Banc.

April 25, 1983.

Rehearing Denied May 23, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for petitioner.

J. Gregory Walta, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Raymer,* 626 P.2d 705 (Colo.App.1980), reversing the defendant's conviction for aggravated robbery and remanding the cause to the district court for additional findings on certain issues. The defendant, Scott Elliott Raymer, was convicted of felony murder, section 18–3–102(1)(b), C.R.S.1973 (1978 Repl.Vol. 8), and aggravated robbery, section 18–4–302, C.R.S.1973 (1978 Repl.Vol. 8). On appeal, the defendant claims that aggravated robbery is a lesser included offense of felony murder and that convictions for both crimes violate his rights against double jeopardy. Additionally, Raymer claims that the police unnecessarily delayed taking him before a judicial officer for an advisement in violation of his Crim.P. 5 rights. The court of appeals agreed with Raymer's contentions. We affirm.

I.

On December 20, 1976, Scott E. Raymer and two of his friends robbed a self-service gas station in Lakewood, Colorado. During the robbery, an attendant was killed when Raymer fired a shotgun through the pay booth window. Later that day, a self-service gas station in Denver, Colorado was robbed and another attendant was killed by suspects using a similar modus operandi. After two days of intensive investigation, Raymer was arrested by a Lakewood police officer at an apartment in Adams County, Colorado. The arrest occurred at 10:15 a.m. on December 22, 1976. The arresting police officer orally advised Raymer of his *Miran-*

da rights and, without further questioning, turned him over to Adams County deputies who transported Raymer to an Adams County police substation.

Raymer was subsequently transferred to the Adams County jail in Brighton, Colorado, where he was held from approximately 1:00 p.m. to 1:30 p.m. One of Raymer's accomplices to the crimes was already in Denver police custody and confessed to complicity in the shootings. Because of the confession, Lakewood police who had arrived at the Adams County jail to question Raymer determined that the suspect should be turned over to Denver police investigators. Accordingly, the Lakewood officers transported Raymer to the Denver jail where they arrived at approximately 2:00 p.m.

Raymer was advised of his *Miranda* rights by the Denver police. He then signed a written advisement form stating that he had been advised of and understood his rights. At that time, Raymer agreed to give a statement without the presence of an attorney. Beginning at approximately 2:40 p.m., nearly four and one-half hours after his arrest, Raymer confessed to committing the Lakewood robbery and firing the gun blast which caused the death of the service station attendant. Raymer, who later refused to sign a transcript of the confession, was then booked into the Denver jail. At 9:30 a.m. on December 24, 1976, almost forty-seven and one-half hours after his arrest, Raymer was advised by a judge of his rights pursuant to Crim.P. 5.

On January 6, 1977, an information was filed against Raymer in Jefferson County for the Lakewood robbery and homicide. In May of 1977, Raymer was tried and convicted of first degree felony murder and aggravated robbery. The trial court sentenced Raymer to death for felony murder and to a term of not less than thirty-six nor more than forty years for aggravated robbery.[1]

The defendant appealed his convictions to the court of appeals. The court held that aggravated robbery is a lesser included offense of felony murder because it considered "robbery," which is an underlying felony for felony murder, a generic category which includes all types of robbery. Therefore, convictions for both aggravated robbery and felony murder were improper. 626 P.2d at 707. The court also concluded that Raymer's confession may have been a product of unnecessary and prejudicial delay resulting from the failure of the police to bring him before a judge for the advisement of his Crim.P. 5 rights. The court remanded the cause to the trial court for findings on whether the delay was necessary and whether the delay was prejudicial to the defendant. The court of appeals ordered the trial court to grant the defendant a new trial if the confession were found to be a product of the illegal delay.

## II.

Scott Raymer was charged by separate counts with felony murder and aggravated robbery. One count alleged felony murder, section 18–3–102(1)(b), C.R.S.1973 (1978 Repl.Vol. 8), in that the defendant on December 20, 1976, "did unlawfully and feloniously commit the crime of robbery" and in the course or in furtherance of this crime or immediate flight therefrom he caused the death of Doris Mae Hargrove who was not a participant in the robbery. A separate count charged the defendant with the crime of aggravated robbery as proscribed by section 18–4–302(1), C.R.S.1973 (1978 Repl.Vol. 8). The second count alleged that on December 20, 1976, the defendant took money from the person or presence of Doris Mae Hargrove by force, threats or intimidation; that during the robbery or immediate flight

---

1. During the defendant's appeal, we held in *People v. District Court,* 196 Colo. 401, 586 P.2d 31 (1978), that the state death penalty was unconstitutional. The trial court then re-sen-tenced Raymer to concurrent sentences of life on the felony murder charge and thirty-six to forty years on the aggravated robbery charge.

therefrom he was armed with a deadly weapon; and that either he had the intent, if resisted, to kill, maim or wound the person robbed with a deadly weapon, or he put the person robbed in reasonable fear of death or bodily injury by use of force, threats or intimidation with a deadly weapon.

Section 18–1–408, C.R.S.1973 (1978 Repl. Vol. 8), provides the framework for the appropriate resolution of the issue of multiple convictions in this case. Subsection 18–1–408(1)(a) prohibits multiple convictions for more than one offense if "[o]ne offense is included in the other, as defined in subsection (5) of this section." Under subsection (5) an offense is included in the other when:

"(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

"(b) It consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or

"(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission."

We recently held in *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983), that section 18–1–408(1), prohibits the multiple convictions of felony murder based upon the killing of the robbery victim and the predicate felony of robbery. The basis of our holding was that the charge of felony murder based upon causation of the robbery victim's death required proof of the very same elements essential to the charge of robbery, and, therefore, robbery was a lesser included offense of felony murder within the meaning of section 18–1–408(5)(a), C.R.S.1973 (1978 Repl.Vol. 8).

We neither held nor implied in *Bartowsheski* that subsection (5)(a) of section 18–1–408 constituted the only test of a lesser included offense. The definition of a lesser included offense in subsection 18–1–408(5) is substantially broader than the test for a lesser included offense developed in our cases decided prior to the adoption of the Colorado Criminal Code. Under these precode cases the determination of the "lesser included" issue turned on whether the establishment of the greater offense necessarily required proof of all of the elements essential to the lesser offense. *E.g., People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974); *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974); *Daniels v. People,* 159 Colo. 190, 411 P.2d 316 (1966). This judicially created standard, which is virtually identical to only one of the three definitions of a lesser included offense in section 18–1–408(5), requires a comparison of the statutory constituents essential to establish the greater charge and the arguably lesser included offense. *See, e.g., People v. Rivera, supra; People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973).

Subsection (5)(c) of section 18–1–408 expands the definition of a lesser included offense to include an offense which "differs from the offense charged only in the respect that less serious injury or risk of injury to the same person, property, or public interests or a lesser kind of culpability suffices to establish its commission." The charge of aggravated robbery qualifies as a lesser included offense of felony murder under this statutory standard.

Section 18–3–102(1), C.R.S.1973 (1978 Repl.Vol. 8), states in pertinent part:

"(1) A person commits the crime of murder in the first degree if:

\* \* \* \* \* \*

(b) Acting either alone or with one or more persons, he commits or attempts to commit ... robbery ... and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than

one of the participants, is caused by anyone."

Aggravated robbery is defined in section 18–4–302(1), C.R.S.1973 (1978 Repl.Vol. 8), as follows:

"(1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:

(a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; *or*

(b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury; or

(c) He has present a confederate, aiding or abetting the perpetration of the robbery, armed with a deadly weapon, with the intent, either on the part of the defendant or confederate, if resistance is offered, to kill, maim, or wound the person robbed or any other person, or by the use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury."

 Aggravated robbery is robbery committed under circumstances in which the actor's conduct creates an increased risk of injury to the victim or instills in the victim an enhanced fear of death or injury. *See Johnson v. People,* 174 Colo. 75, 482 P.2d 105 (1971). The felony murder statute addresses those same increased risks or fears, only to a greater extent, by proscribing as first degree murder the causation of another's death during the commission of robbery. The purpose of the felony murder statute is to hold a participating robber accountable for a nonparticipant's death, even though unintended, as long as death is caused by an act committed in the course of or in furtherance of the robbery or in the course of immediate flight therefrom. Sec-

tion 18–3–102(1)(b), C.R.S.1973 (1978 Repl. Vol. 8); *see generally* W. LaFave & A. Scott, *Handbook on Criminal Law* § 71, at 547–48 (1972). Where, as here, the robbery victim is actually killed during the course of a robbery, then the crime of aggravated robbery differs from the charge of felony murder only in the sense contemplated by section 18–1–408(5)(c), namely, that an injury less serious than death suffices to establish its commission. Accordingly, we hold that where the defendant's conviction for felony murder is based upon the causation of the robbery victim's death during the course of the robbery, a charge of aggravated robbery of the same victim is a lesser included offense of the felony murder charge within the meaning of subsection 18–1–408(5)(c).

### III.

The court of appeals ordered a remand to determine whether the defendant's statements to the police were the product of a Crim.P. 5(a)(1) violation. The court concluded that unnecessary and prejudicial delay may have occurred before the defendant was advised of his rights by a county or district judge. We agree with the court of appeals that a remand is necessary under the facts of this case.

Crim.P. 5(a)(1) requires a peace officer making an arrest to take the arrested person "without unnecessary delay before the nearest available county or district judge." Crim.P. 5(a)(2) requires a judge to inform the accused of his privilege against self-incrimination and his right to the appointment of an attorney at state expense if he lacks funds to retain an attorney. We observed in *People v. Heintze,* 200 Colo. 248, ——, 614 P.2d 367, 371 (1980), that the purpose of Rule 5 is "to furnish a prophylaxis against abuses in the detention process and, more importantly, to place the accused in early contact with a judicial officer so that the right to counsel may not only be clearly explained but also be implemented upon the accused's request." We have consistently

declined to adopt a per se rule of exclusion for Rule 5 violations, but instead have required the defendant to show that the delay was unnecessary and that some prejudice resulted therefrom. *E.g., People v. Heintze, supra; People v. Hosier,* 186 Colo. 116, 525 P.2d 1161 (1974); *People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974); *Aragon v. People,* 166 Colo. 172, 442 P.2d 397 (1968).

■ A "necessary delay" is one reasonably related to the administrative process attendant upon the arrest of an accused. *People v. Heintze, supra.* Such delays are usually associated with fingerprinting, photographing, taking inventory of personal belongings, preparation of necessary charging documents and reports, and other legitimate administrative procedures. *Id.* Where, however, the delay is occasioned by the decision of law enforcement officers to conduct a custodial interrogation of the defendant before presenting him to a judicial officer for a proper advisement of rights, then clearly such a delay is not a "necessary" delay within the intendment of Crim.P. 5(a).

■ In determining the existence of prejudice the appropriate inquiry is whether the unnecessary delay reasonably contributed to the acquisition of the challenged evidence. As we observed in *People v. Heintze, supra:*

"In view of the important role played by Crim.P. 5 in speedily implementing the right to counsel especially for an indigent defendant, some important considerations on the issue of prejudice are: whether an attorney had already been retained by, or had been made available to, the defendant during the period of unnecessary delay; whether that attorney was accessible to the defendant prior to the challenged statement; and whether the defendant freely and knowingly waived the presence of the attorney in making the challenged statement to the police."

200 Colo. at ——, 614 P.2d at 372.

■ The relevant time period which must be examined for purposes of Crim.P. 5(a) is the time between the arrest and the acquisition of the challenged evidence. It cannot be said that the delay *after* the statement was given in any way contributed to the acquisition of the challenged statement. *See People v. Harper,* 127 Ill.App.2d 420, 262 N.E.2d 298 (1970) (ten hour period between the arrest and confession relevant for purposes of unnecessary delay); *Commonwealth v. Palmer,* 463 Pa. 26, 342 A.2d 387 (1975) (three hour period between arrest and confession relevant on delay issue). Under the circumstance here, the relevant time period was the four and one-half hour period between the arrest in Adams County and the confession in Denver. The defendant made no claim that the police obtained evidence as a result of the delay which occurred after the statement was obtained.

■ It is a question of fact whether the Adams County and Denver law enforcement authorities unnecessarily delayed presenting the defendant before a judge for advisement of rights prior to the defendant's custodial interrogation that resulted in his confession. This issue of fact should be resolved by the trial court on the basis of a fully developed evidentiary record. If the trial court should determine that the delay was unnecessary and that it contributed to the acquisition of the defendant's confession, then, as the court of appeals held, a new trial on the felony murder charge should be ordered. If, on the other hand, the trial court is not so satisfied, then the judgment of conviction for first degree murder should be reinstated.

Accordingly, we affirm the judgment of the court of appeals.

ROVIRA, J., concurs in part and dissents in part.

HODGES, C.J., joins in the concurrence and the dissent.

ROVIRA, Justice, concurring in part and dissenting in part:

I concur in the holding in Part II of the majority opinion because I understand it to

be limited to the circumstance where the robbery victim is killed during the course of the robbery. An entirely different holding might be appropriate where the person killed was not the robbery victim, but, instead, death occurred to another person during the course of the robbery.

I dissent from Part III of the majority opinion ordering a remand for the purpose of determining whether law enforcement authorities unnecessarily delayed taking the defendant before a judge for advisement of his rights prior to custodial interrogation. The record discloses that the trial court held an extensive hearing on the defendant's motion to suppress his confession and whether that confession was the product of unnecessary delay in bringing him before a judge for the advisement of his rights pursuant to Crim.P. 5.

It is undisputed that the defendant was arrested at 10:15 a.m., taken to an Adams County police substation, then to the Adams County jail in Brighton, and finally to the Denver police station where he arrived between 2:00 p.m. and 2:30 p.m.

The defendant, after being advised of his *Miranda* rights for the third time, gave a statement at approximately 2:40 p.m. confessing his participation in the killing of Doris Mae Hargrove. The record further reflects that most of the four and one-half hour period between the arrest and the defendant's confession was spent transporting him from the place of arrest to Denver and performing routine administrative procedures. At no time before the defendant was brought to Denver was there any interrogation concerning the Lakewood robbery and killing. The defendant gave his statement no more than forty minutes after arriving in Denver, and no evidence was introduced by him at the suppression hearing of any connection between that brief

delay, the failure to provide a judicial advisement of his rights, and the resulting statement. *See Raigosa v. State,* 562 P.2d 1009 (Wyo.1977).

In my view, the majority opinion improperly applies Crim.P. 5 and *People v. Heintze,* 200 Colo. 248, 614 P.2d 367 (1980), to the facts of this case. The police do not have an obligation to take an arrested person to a judge for an advisement of his rights immediately after arrest. The police are entitled to a reasonable time period in which to transport the accused to the proper jurisdiction, especially, as here, when the events occur within a metropolitan area. *See Commonwealth v. Clifton,* 272 Pa.Super. 95, 414 A.2d 686 (Pa.Super.1979) (four and one-half hour period consisting of transportation and twenty-five minutes extra not unnecessary); *Commonwealth v. Terebieniec,* 268 Pa.Super. 511, 408 A.2d 1120 (Pa.Super.1979) (time period consisting of transportation and thirty minutes extra not unnecessary).

The trial court has already considered the Crim.P. 5 delay issue and concluded that the delay did not contribute to the acquisition of the challenged statement.[1] The trial judge, whose ruling was issued before our decision in *Heintze, supra,* concluded that, under the facts of this case, the delay was not unreasonable and that the detention was not used to exact evidence from an unwitting suspect. In *Heintze,* we recognized that a "per se rule of exclusion" for Rule 5 violations was unfeasible, and, instead, required a case-by-case determination of the delay issues. 200 Colo. at ——, 614 P.2d at 371. The trial court's findings here, while not phrased exactly in the language adopted in *Heintze,* are dispositive of the issue of delay. Both the issue of necessity and the issue of prejudice were argued before the trial court and rejected.[2] Since no further purpose will be served by re-

---

1. The trial court found that the defendant was alert, calm, unemotional, and not confused when he gave his statement, and there was no showing that any force, duress, coercion, or promises or threats were made to him.

2. Counsel for the defendant specifically argued that the challenged statement was a product of unnecessary delay. Counsel also argued that

manding the case for findings already made by the trial court, I would reverse the order of the court of appeals.

I am authorized to say that Chief Justice HODGES joins me in this dissent.

Rule 5 is violated if "delay is for the purpose of extracting a confession or incriminating statements"; or, alternatively, if it is "prejudicial." The prosecutor argued that even if delay were shown, the defendant must make a showing of unfair prejudice. The trial court resolved the issue in favor of the prosecution and so ruled. In my view, the trial court made sufficient findings of necessity and prejudice to meet the dictates of *Heintze.*