22CA1149 Peo v Almeida 01-15-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1149
Larimer County District Court No. 20CR340
Honorable C. Michelle Brinegar, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Efren Jose Almeida,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Amy D. Trenary, Alternate Defense Counsel, Broomfield, Colorado, for
Defendant-Appellant

¶ 1     Efren Jose Almeida appeals the judgment of conviction for first degree felony murder[1] and attempted aggravated robbery.  He mainly argues that we should vacate the first degree felony murder conviction because the jury returned impermissibly inconsistent verdicts.  We disagree and affirm the felony murder conviction.  We also reject Almeida's constitutional challenges to his life without parole sentence for felony murder.

¶ 2     We agree, however, with Almeida's contention that the district court should have merged the attempted aggravated robbery conviction into the felony murder conviction.  We therefore vacate the attempted aggravated robbery conviction and remand the case to the district court to merge the convictions and correct the mittimus.

## I.     Background

¶ 3     One winter evening, a warehouse worker discovered a coworker's body and called 911.  The victim had been shot twice in

---

[1] The statute in effect at the time of the charged crime classified felony murder as first degree murder.  § 18-3-102(1)(b), C.R.S. 2020.  Though felony murder has since been reclassified as second degree murder, *see* § 18-3-103(1)(b), C.R.S. 2025, we cite the statute in effect at the time of the charged crime and refer to the offense as felony murder.

the chest and once in the head and had multiple blunt force injuries, including a fractured skull. The resulting investigation soon led to Nicole Gibson, the victim's ex-girlfriend.

¶ 4     Gibson initially denied any involvement in the victim's death. But shortly after, Gibson admitted that she and Almeida had gone to the warehouse to retrieve items that the victim had purportedly stolen from Gibson's father and that Almeida shot the victim.

¶ 5     The prosecution charged Gibson with several crimes, including first degree murder after deliberation. The prosecution also charged Almeida with first degree murder after deliberation, felony murder (predicated on robbery or attempted robbery), tampering with physical evidence, attempted aggravated robbery, and two accompanying crime of violence sentence enhancers.[2] Gibson ultimately pleaded guilty to conspiracy to commit first degree murder in exchange for testifying against Almeida.

¶ 6     Almeida didn't testify at trial. His counsel defended on the theory that although Almeida accompanied Gibson to the

---

[2] The prosecution also charged Almeida with two counts of possession of a weapon by a previous offender but later dismissed those counts.

warehouse, it was Gibson who shot the victim. Defense counsel argued that Almeida had no advance knowledge of Gibson's plan to rob or kill the victim.

¶ 7 By contrast, Gibson testified that Almeida "volunteered" to accompany her to the warehouse to retrieve the guns that the victim had allegedly stolen from Gibson's father. Although Gibson admitted that she had threatened to kill the victim in the weeks before his murder, Gibson testified that Almeida shot the victim when she and Almeida confronted him about Gibson's "stuff." Gibson explained that, after the shooting, she and Almeida fled, burned the clothes that they had been wearing, and disposed of other evidence.

¶ 8 Following the parties' presentation of evidence, the court provided the jury with a lengthy packet of jury instructions. The instructions included a series of elemental instructions on the charged crimes. It also instructed the jury on complicitor liability for felony murder and attempted aggravated robbery, among other charged crimes. The jury convicted Almeida of felony murder,

attempted aggravated robbery, and tampering with physical evidence, but it acquitted him on the remaining charges.[3]

¶ 9     Before sentencing, Almeida challenged the constitutionality of the statutorily mandated life without parole sentence for felony murder. The court rejected the challenge and sentenced Almeida to life in prison without the possibility of parole for felony murder along with concurrent sentences on the remaining counts.

## II.     Inconsistent Verdicts

¶ 10    Almeida contends that we must vacate the felony murder conviction because the jury returned impermissibly inconsistent verdicts. We disagree for a few reasons.

### A.     Preservation

¶ 11    The People say we shouldn't review this contention because Almeida waived it by not objecting to any purported inconsistency when the verdicts were read aloud in court. We are unpersuaded, however, that defense counsel's lack of objection evinces awareness of a purported inconsistency between verdicts on separate counts, let alone an intentional relinquishment of Almeida's right to legally

---

[3] Almeida doesn't challenge his conviction for tampering with physical evidence.

consistent verdicts. *See Rail v. People*, 2019 CO 99, ¶¶ 35-37; *see also People v. Shockey*, 2023 COA 121, ¶¶ 31-32 (concluding that the defendant did not waive "the inconsistent verdict issue" by not contemporaneously objecting before the court released the jurors) (*cert. granted* Sept. 30, 2024).

### B. Legal Principles and Standard of Review

¶ 12 "[D]ue process prevents a defendant from being convicted of crimes with mutually exclusive elements." *People v. Delgado*, 2019 CO 82, ¶ 27. "[T]wo guilty verdicts are mutually exclusive when the existence of an *element* of one of the crimes negates the existence of an *element* of the other crime." *People v. Rigsby*, 2020 CO 74, ¶ 27; *accord Shockey*, ¶ 41. When that occurs, the verdicts "are legally and logically inconsistent and should not be sustained." *Rigsby*, ¶ 16 (citation omitted). But consistency between a guilty verdict on one count and an acquittal on another count is not necessary. *See People v. Frye*, 898 P.2d 559, 571 (Colo. 1995); *see also Dunn v. United States*, 284 U.S. 390, 393-94 (1932) (noting general rule that consistency between guilty and not guilty verdicts is not required).

¶ 13 We review de novo whether verdicts are mutually exclusive, *Delgado*, ¶ 13, or impermissibly inconsistent, *see People v. Brooks*,

2020 COA 25, ¶¶ 19-20 (applying de novo standard of review to determine "whether a verdict is internally inconsistent and thus ambiguous").

C.    Felony Murder — Predicated on Robbery or Attempted Robbery

¶ 14    Almeida argues that we must vacate the felony murder conviction because it is "irreconcilably inconsistent with the jury's finding that Almeida or a complicitor did not cause [the victim's] death during the *predicate* aggravated robbery attempt." (Emphasis added.)

¶ 15    This fundamental premise — that the felony murder conviction is *predicated* on attempted aggravated robbery — is wrong. The prosecution charged Almeida with felony murder predicated on robbery or attempted robbery. Consistent with that charge, the court instructed the jury on the elements of felony murder as follows:

1.    That the defendant,

2.    in the State of Colorado, at or about the date and place charged,

3.    acting alone or with one or more persons,

4.    committed or attempted to commit *Robbery*, and

6

5. in the course of or in furtherance of the crime of *Robbery* that he was committing or attempting to commit, or in the immediate flight therefrom,

6. the death of a person, other than one of the participants, was caused by anyone.

(Emphases added.)

¶ 16 The court also properly instructed the jury that a person commits robbery if he knowingly took "anything of value from the person or presence of another by the use of force, threats, or intimidation," § 18-4-301(1), C.R.S. 2025, and that a person commits attempted robbery if he takes a "substantial step" towards committing robbery, *see* § 18-2-101(1), C.R.S. 2025 (outlining elements of criminal attempt).

¶ 17 Because "the commission or attempt to commit the predicate offense is an essential element of felony murder," *Doubleday v. People*, 2016 CO 3, ¶ 22, to convict Almeida of felony murder, the jury had to find that Almeida (or a complicitor) committed or attempted to commit robbery and that, in the course of or in furtherance of the robbery or attempted robbery, or the immediate flight therefrom, "anyone" caused the victim's death, § 18-3-

102(1)(b). But the jury did not have to find that that the victim died to find that Almeida committed robbery or attempted robbery. *See* § 18-4-301(1). Because "simple robbery suffices as the predicate felony" for felony murder, the jury did not have to find Almeida "guilty of committing the element of aggravation" to find him guilty of felony murder. *People v. Driggers*, 812 P.2d 702, 705 (Colo. App. 1991).

¶ 18    Thus, we disagree with Almeida to the extent he claims that the felony murder verdict must be vacated due to some inconsistency between the felony murder conviction and the *charged* predicate felony. *Cf. Brooks*, ¶¶ 22-25 (discussing internal inconsistencies within a single verdict).

D.    Attempted Aggravated Robbery — Special Interrogatory

¶ 19    Setting aside Almeida's misinterpretation of the predicate felony, his argument, as we understand it, is that an inconsistency exists between the jury's verdict on the felony murder count and its finding that the prosecution had not proved one of the crime of violence counts related to the attempted aggravated robbery count.

¶ 20    Separate from felony murder, the prosecution charged Almeida with attempted aggravated robbery and two accompanying crime of

8

violence counts.  The court accordingly instructed the jury on the elements of aggravated robbery as follows:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. took anything of value,

5. from the person or presence of another,

6. by the use of force, threats, or intimidation, and

7. during the act of robbery or immediate flight therefrom,

8. knowingly,

9. wounded or struck any person,

10. with a deadly weapon.

¶ 21    It also instructed the jury on the elements of attempt to commit aggravated robbery.  And finally, the court instructed the jury that, if it found Almeida guilty of attempted aggravated robbery, it should answer two verdict questions (which related to the two accompanying crime of violence counts): (1) Did the defendant cause serious bodily injury or death during the attempted aggravated robbery; and (2) did the defendant use, or

9

possess and threaten the use of, a deadly weapon during the attempted aggravated robbery?

¶ 22    The jury returned the following guilty verdict for attempted aggravated robbery:

** II. We, the jury, find the defendant, Efren Jose Almeida, GUILTY of

☒      Criminal Attempt to Commit Aggravated Robbery.

OR

[ ]     Criminal Attempt to Commit Robbery

FOREPERSON

We further unanimously find, with respect to the verdict questions for this count, as follows:

1.     Did the defendant cause serious bodily injury or death?

[ ] Yes          ☒ No

2.     Did the defendant use, or possess and threaten the use of, a deadly weapon?

☒ Yes          [ ] No

FOREPERSON

¶ 23    Almeida has directed us to no authority — and we are aware of none — that has found a legal inconsistency between a general verdict on one count and a finding that the prosecution had not proved a crime of violence on a separate count.  And while Almeida relies on *Brooks* and *Shockey* to support his claim that the verdicts are legally inconsistent, those cases involve internal inconsistencies

10

between a verdict and a related crime of violence finding on a *single*

count. *See Brooks*, ¶¶ 22-25; *Shockey*, ¶¶ 35, 42, 51.

¶ 24 Take *Brooks* for example. There, the prosecution charged the defendant with first degree burglary as a crime of violence. *Brooks*, ¶ 4. The jury convicted the defendant as charged, which required a finding that the defendant committed the burglary with a deadly weapon. *Id.* at ¶ 24. In response to the related crime of violence special interrogatory, however, the jury found that the defendant did not commit burglary with a deadly weapon. *Id.* Because the special interrogatory finding negated an element of first degree burglary in the same count, the *Brooks* division held it was inconsistent. *Id.* at ¶ 25; *see also Shockey*, ¶¶ 1, 51 (concluding that second degree murder verdict was ambiguous where the jury's response to the crime of violence count associated with the second degree murder charge negated elements of second degree murder).

¶ 25 But the *Brooks* division disagreed with the defendant that the special interrogatory finding that the defendant did not use a deadly weapon during the burglary negated an element of his *separate* menacing convictions, which also required a finding that defendant used a deadly weapon. *See Brooks*, ¶¶ 7, 34. The division observed

11

that the defendant "misapprehend[ed] the nature of mutually exclusive verdicts" and that the defendant "is actually attacking a perceived conflict between a *not guilty* verdict on the crime of violence and the guilty verdict on the felony menacing charges." *Id.* at ¶¶ 34, 37. And because consistency is not required between guilty and not guilty verdicts, the division affirmed the menacing convictions. *Id.* at ¶¶ 37, 40; *see also Dunn,* 284 U.S. at 393-94.

¶ 26 As in *Brooks,* we cannot conclude that the jury's conviction on felony murder is impermissibly inconsistent with its attempted aggravated robbery conviction. Nothing in the essential elements of felony murder and attempted aggravated robbery negate one another. *See Delgado,* ¶¶ 2-3. And while the jury found that the prosecution had not proved one crime of violence count for attempted aggravated robbery, consistency is not required between a finding of not guilty on a crime of violence count related to one crime and a guilty finding on a separate crime. *Brooks,* ¶¶ 12-13; *see also Armintrout v. People,* 864 P.2d 576, 580 (Colo. 1993) (although a sentence enhancer is not an essential element of an offense, it must still be proved beyond a reasonable doubt).

¶ 27    Even beyond that, we have an obligation to "reconcile and uphold verdicts if the evidence so permits." *Shockey*, ¶ 33 (citation omitted).  Based on the evidence presented at trial, the jury could have found that Almeida (or a complicitor) committed attempted aggravated robbery without regard to the victim's death.  Indeed, Gibson testified that she and Almeida went to the warehouse to take back items that Gibson claimed the victim had stolen, that Almeida had a gun, and that they confronted the victim and demanded Gibson's "stuff."  The prosecution also presented evidence that the victim had multiple blunt force head injuries from which the jury could infer that one or both of the confederates "wounded or struck" the victim.  That's all that was required to find Almeida guilty of attempted aggravated robbery.  *See* § 18-4-302(1)(b), C.R.S. 2025 (defining aggravated robbery); § 18-2-101(1).

¶ 28    The prosecution did not need to prove — and the jury did not need to find — that anyone caused the victim's death to convict Almeida of attempted aggravated robbery.  Indeed, the prosecutor argued in closing argument that, in addition to shooting the victim during the attempted robbery, Almeida "struck [the victim] with a deadly weapon."  Thus, because evidence was presented from which

13

the jury could have found Almeida guilty of attempted aggravated robbery unrelated to the shooting, we disagree with Almeida that the felony murder, attempted aggravated robbery, and crime of violence counts were "based on identical evidence."[4] Because the evidence supports consistent verdicts, we presume "that the jury took that view." *People v. Scearce*, 87 P.3d 228, 232 (Colo. App. 2003).

¶ 29 But even if the evidence was "identical," consistency between a not guilty verdict on one count and an acquittal of a crime of violence on another count is not required. *See Frye*, 898 P.2d at 566-68. After all, such a verdict "may have been the result of compromise, or of a mistake on the part of the jury," and we will not speculate about the jury's reasons for seemingly inconsistent verdicts. *Dunn*, 284 U.S. at 394.

---

[4] And, indeed, the crime of violence count that the jury found the prosecution had proved beyond a reasonable doubt (that Almeida or a complicitor used, possessed, or threatened the use of a deadly weapon) is consistent with the tenth element of the attempted aggravated robbery instruction.

III.    Felony Murder Sentence

¶ 30    Almeida next challenges the constitutionality of his life without parole sentence for felony murder.  He argues that the sentence is categorically unconstitutional, and, alternatively, that it is grossly disproportionate to the offense.  We disagree.

A.    Categorical Challenge

¶ 31    Almeida contends that his life without parole sentence is categorically unconstitutional given the legislature's decision to reclassify felony murder from a class 1 felony to a class 2 felony. He argues that the reclassification demonstrates that the life without parole sentence "no longer comports with evolving standards of decency."

¶ 32    But during the pendency of this appeal, the supreme court considered and rejected this precise contention.  *Sellers v. People*, 2024 CO 64, ¶ 19 (*Sellers II*), *aff'g*, 2022 COA 102 (*Sellers I*).  After assessing the objective indicia of society's standards, as well as exercising its independent judgment, the court held that a life without parole sentence "for felony murder [for an adult offender] is not categorically unconstitutional" under either the federal or state constitutions.  *Id.* at ¶ 37.

¶ 33    Because we're bound by *Sellers II*, we reject Almeida's claim that his life without parole sentence is categorically unconstitutional.[5]

### B.    Proportionality Challenge

¶ 34    The district court conducted an abbreviated proportionality review and concluded that Almeida's life without parole sentence was not grossly disproportionate to his felony murder conviction. Almeida challenges the district court's abbreviated proportionality review, again arguing that his life without parole sentence is grossly disproportionate.

### 1.    Legal Principles and Standard of Review

¶ 35    The United States and Colorado Constitutions prohibit the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; Colo. Const. art. II, § 20. This prohibition applies to punishments that are "disproportionate to the crime committed."

---

[5] In his opening brief, Almeida specifically "adopt[ed] the arguments presented in the *Sellers* brief." *See People v. Sellers*, 2022 COA 102 (*Sellers I*), *aff'd*, 2024 CO 64 (*Sellers II*). But in his reply brief (after the supreme court decided *Sellers II*), he shifted gears and argued that his case "presents a narrower question than the one rejected" in *Sellers II*. We do not consider new arguments in reply briefs. *See People v. Woodyard*, 2023 COA 78, ¶ 15 n.3.

16

*Solem v. Helm*, 463 U.S. 277, 284 (1983); *People v. Kennedy*, 2025 CO 63, ¶ 12. But "strict proportionality" isn't required; only a "grossly disproportionate" sentence is unconstitutional. *Wells-Yates v. People*, 2019 CO 90M, ¶ 5 (citation omitted).

¶ 36     To determine whether a sentence is grossly disproportionate, we conduct a two-step analysis. *Sellers II*, ¶ 44. Under step one, we conduct an abbreviated proportionality review, which has two subparts. *Id.* We assess (1) the gravity or seriousness of the offense and (2) the harshness of the sentence imposed. *Id.*

¶ 37     Regarding the first subpart, certain crimes are considered per se grave or serious. *Id.* at ¶ 48. If a crime is per se grave or serious, we skip the first subpart and jump directly to the second subpart to assess the harshness of the sentence. *Id.*; *see also Kennedy*, ¶ 16 (referring to this as "The 'Per Se' Shortcut"). In assessing the sentence's harshness, we consider parole eligibility. *Id.* at ¶ 51.

¶ 38     We continue to step two — an extended proportionality review — only if the abbreviated proportionality review gives rise to an inference of gross disproportionality. *Id.* at ¶ 45. "[A]n abbreviated proportionality review will almost always yield a finding

17

that the sentence is not unconstitutionally disproportionate." *Wells-Yates*, ¶ 21.

¶ 39    We review de novo whether Almeida's sentence is grossly disproportionate. *Sellers II,* ¶ 16.

2.    Almeida's Sentence Isn't Grossly Disproportionate

¶ 40    Almeida argues that "in light of the legislative reclassification, felony murder cannot be deemed a per se grave and serious offense."

¶ 41    But a division of this court rejected that argument in *Sellers I.* In that case, the defendant and some companions robbed two drug dealers. *Sellers I,* ¶ 1. One of the defendant's companions shot and killed one of the drug dealers. *Id.* The defendant was convicted of felony murder and sentenced to life without parole. *Id.* at ¶¶ 1, 33. On appeal, a division of this court rejected the defendant's claim that the reclassification of felony murder affected the gravity or seriousness of the offense. *Id.* at ¶ 66. It held that "[f]elony murder is a per se grave or serious offense because it necessarily involves committing a violent predicate felony that results in the death of a person." *Id.* at ¶ 65. "Thus, every factual scenario giving rise to a charge of felony murder will be grave or serious." *Id.*; *see also*

*Wells-Yates*, ¶ 64 (noting that robbery is a per se grave or serious offense). On certiorari review, the supreme court left that holding undisturbed. *See Sellers II*, ¶ 49.

¶ 42 Though Almeida disagrees with *Sellers I*, he offers no compelling reason why we should depart from it. Regardless, we agree with that division's well-reasoned conclusion that felony murder is a per se grave and serious offense. Having so concluded, we do not address Almeida's claim that the facts and circumstances of the crime are not grave and serious (though we acknowledge that the district court separately found that "the facts of this case are grave and serious"). *See Wells-Yates*, ¶ 13.

¶ 43 We instead jump to the second subpart and consider the harshness of Almeida's sentence. *Id.* We acknowledge, of course, that life without parole is a harsh sentence. But we cannot conclude that a life without parole sentence is grossly disproportionate to the per se grave and serious offense of felony murder. *Sellers I*, ¶ 67; *see Sellers II*, ¶¶ 51-53. After all, the jury's verdict leaves no doubt it found that Almeida participated in a violent per se grave and serious predicate felony that resulted in the victim's death. *See Wells-Yates*, ¶ 64.

¶ 44    We therefore affirm the sentence without the need for an

extended proportionality review.

IV.    Merger

¶ 45    Almeida contends — and the People agree — that "[t]he

attempted aggravated robbery conviction and sentence should be

vacated because that predicate felony is subsumed by felony

murder."

¶ 46    The problem, of course, is that attempted aggravated robbery

isn't the predicate felony — robbery or attempted robbery is.  Still,

the parties' position is not without legal support.  Despite

misidentifying the predicate felony, both parties cite *People v.*

*Raymer*, 662 P.2d 1066 (Colo. 1983).  In that case, the supreme

court concluded that "[t]he charge of aggravated robbery qualifies as

a lesser included offense of felony murder."  *Id.* at 1069.  It reached

that conclusion based on the merger test in section 18-1-408(5)(c),

C.R.S. 2025, which, as relevant here, "expands the definition of a

lesser included offense to include an offense which 'differs from the

offense charged only in the respect that less serious injury or risk of

injury'" to the same person "suffices to establish its commission."

*Raymer*, 662 P.2d at 1069 (quoting § 18-1-408(5)(c)); *see also People*

*v. Rock*, 2017 CO 84, ¶¶ 12-14 (describing section 18-1-408(5)(c) as providing a broader merger test than the "statutory or strict elements test" in section 18-1-408(5)(a)). Thus, where, as here, "the defendant's conviction for felony murder is based upon the causation of the robbery victim's death during the course of the robbery, a charge of aggravated robbery of the same victim is a lesser included offense of the felony murder charge." *Raymer*, 662 P.2d at 1070.

¶ 47    Given *Raymer*, and without any argument that the attempted aggravated robbery conviction should not merge into the felony murder conviction, we vacate the attempted aggravated robbery conviction and sentence.

## V.    Disposition

¶ 48    We vacate Almeida's conviction and sentence for attempted aggravated robbery and remand for the district court to merge the attempted aggravated robbery conviction into the felony murder conviction and correct the mittimus accordingly. We affirm the judgment in all other respects.

JUDGE LIPINSKY and JUDGE KUHN concur.