## Commonwealth *v.* Toth, Appellant.

Argued November 20, 1973. Before JONES, C.J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*J. A. Boccabella,* with him *James M. Potter,* and *Liever, Hyman and Potter,* for appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 24, 1974:

The appellant, Louis Toth, was convicted by a jury of burglary, larceny, receiving stolen goods and conspiracy. Post-trial motions were denied and a prison sentence was imposed. On appeal, the Superior Court affirmed the judgment by a "per curiam" order. Judge HOFFMAN filed a dissenting opinion in which Judge

PACKEL joined. See 223 Pa. Superior Ct. 354, 297 A. 2d 498 (1972). We granted allocatur and now reverse.[1]

The pertinent facts are these:

The crimes for which appellant was tried stemmed from the burglary of a hotel in Berks County. The Commonwealth's case was established primarily through the testimony of three individuals who admitted committing the burglary and stated appellant participated. Toth denied participating in the burglary and attempted to show that the testimony of the three Commonwealth witnesses who implicated him was fabricated to "get him," and in order for them to receive lenient treatment from the district attorney. To sustain this position, appellant called on Thomas McDonald to testify he had been confined in the Chester County prison at the same time as two of these witnesses, and heard them say they intended to implicate the appellant in the hotel and other burglaries in order to save themselves. The district attorney objected to the testimony as hearsay, but the defense counsel correctly counterargued the testimony was offered, not for the truth of the matter, but to prove the statement was made. The trial judge admitted the testimony.

During his closing argument to the jury, the district attorney stated: "In addition, McDonald's testimony was very interesting. I objected because he was testifying as to all these things that Barlow and Taggart said in response to the questions asked by Mr. Potter [defense counsel]. Then Mr. Potter, as I recall, said, 'Well, we're not entering this for the truth of it.' In other words, Mr. Potter said that they weren't putting this in because it was true. I had no idea why it was

---

[1] Allocatur was granted limited to one issue, namely, "whether the trial court committed reversible error in refusing to grant a new trial because of prejudicial remarks made by the prosecutor during his closing argument."

put in, but apparently Mr. Potter didn't believe it." Defense counsel immediately made a motion for a mistrial, which the trial judge refused to grant.[2] The district attorney's remarks were clearly unwarranted and prejudicial, and a mistrial should have been granted.

This Court in the very recent past has been called upon to review improper and prejudicial remarks by district attorneys. In *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971), the appellant was granted a new trial because the district attorney called the accused a liar in the presence of the jury. More recently, in *Commonwealth v. Revty*, 448 Pa. 512, 295 A. 2d 300 (1972), a conviction was reversed because the district attorney overzealously went beyond the reasonable inferences permitted by the evidence, thereby misleading the jury.

The instant case falls directly in line with these decisions. Herein, the district attorney, either intentionally or because of a lack of knowledge of the rules of evidence, misled the jury. His comment was such that the jury was completely misled as to the purpose of McDonald's testimony: testimony which was fundamental to appellant's defense. The comment of the district attorney completely distorted the purpose of the testimony, so much so that in a few sentences the appellant's defense was substantially impaired, if not destroyed. In effect, the jury was told no one believed McDonald's testimony was true, not even appellant's counsel, and the natural conclusion the jury would draw from this was to disregard the testimony.

---

[2] The record is barren of any indication the trial judge instructed the jury to disregard the district attorney's statement, and the trial judge did not instruct the jury on this comment in his charge.

Such conduct by a district attorney is improper and beyond the scope of fair play.[3]

A district attorney holds an office of unusual responsibility, and he must exercise his duties with complete impartiality. In *Commonwealth v. Bubnis,* 197 Pa. 542, 47 A. 748 (1901), this Court expressed the following views on the conduct of one who holds this high office: "It may be proper for us to say in this connection that, in his official capacity, clothed with the gravest responsibilities, and exercising functions in a measure judicial, the district attorney should ever be cautious in expressing to a jury his belief in the guilt of the accused. If convinced of it, his duty is to lead them to his own judgment by pointing out to them, intelligently and impartially, the evidence which cannot fairly justify any other conclusion. The district attorney is a quasi-judicial officer. He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers, as it is to see that no guilty man escapes. Hence, he should act impartial-

---

[3] The American Bar Association Project on Standards for Criminal Justice also condemns such conduct:

"5.8 Argument to the jury

"(a) The prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. . . .

"5.9 Facts outside the record.

"It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal. . . ."

A.B.A. Standards, The Prosecution and Defense Functions, at 126-29.

ly. He should present the commonwealth's case fairly, and should not press upon the jury any deductions from the evidence that are not strictly legitimate. When he exceeds this limit, and in hot zeal seeks to influence them by appealing to their prejudices, he is no longer an impartial officer, but becomes a heated partisan': Com. v. Nicely, 130 Pa. 261." Id. at 550-51, 47 A. at 749-50.[4] See also *Commonwealth v. Pierce*, 451 Pa. 190, 303 A. 2d 209 (1973); *Commonwealth v. Toney*, 439 Pa. 173, 266 A. 2d 732 (1970); *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936); *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927); *Commonwealth v. Cicere*, 282 Pa. 492, 128 A. 446 (1925). The district attorney's impartial duty was not properly carried out in the present case.

The order of the Superior Court, and the judgment of the trial court are reversed, and a new trial is granted.

----

[4] In *Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629 (1935), the United States Supreme Court stated: "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

Id. at 88, 55 S. Ct. at 633.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I agree with the Court that the remark of the District Attorney was improper, and I do not condone it. My review of the record, however, satisfies me that the Court greatly exaggerates the incident, and that it could not have had the destructive effect on the defendant's case that the Court attributes to it. The District Attorney's remark was, in my view, "harmless beyond a reasonable doubt," *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711 (1967), and the motion for a mistrial was properly over-ruled.

To place the matter in perspective, defense witness McDonald had been testifying for some time to conversations which he had had with Commonwealth witnesses Taggart and Barlow (all three being then in jail) as to their desire to frame the defendant with conviction of some burglaries. McDonald was then asked whether Taggart said anything about bail, and answered that "Taggart told me he had $80,000 bail. . . ." The District Attorney then said, "I'm sorry, I didn't hear that figure." The witness then responded: "He [Taggart] told me that he had $80,000 bail, that he signed statements [for the prosecution, presumably] and his bail went down to $8,000, and he would sign any statement. Then later on, in another county, he had $30,000 bail, and he told me that he signed statements there and got $3,000 there, so he had a total of $11,000 left." Thereupon the following occurred:

"Mr. Snyder [the District Attorney]: Your Honor, I would like to ask that this answer be stricken . . . as being purely hearsay.

. . .

"Mr. Potter [defense counsel]: It's not offered for the truth of it, Your Honor; it's offered for what Taggert said.

. . .

"The Court: I'll overrule the objection. I agree that this doesn't prove the truth of the alleged statements.

"The Witness [continuing]: So he had it down to $11,000. And he said that after this he wouldn't make any more statements unless people would give nominal bail for making statements. . . ." (N.T. 130, 131)

When later the District Attorney, in his summation, made the improper remark, quoted in the majority opinion (particularly the last sentence, that he had "no idea why it [the McDonald answer] was put in, but apparently Mr. Potter didn't believe it") and the objection to it was made, the court observed, "Well, it came up on a technical point." Defense counsel, Mr. Potter, agreed, and then said, "For him to say that I'm calling my witness a liar, I object and ask for a mistrial."

"The Court: Never mind. Make no more speeches, gentlemen.

[Defense counsel] : I'm not on trial here.

The Court: It came up on a technical point, and I think you can drop it now."
The mistrial motion was then overruled.

Viewed in this context, I think the court below was correct when, in its opinion, it stated that the District Attorney's comment "carried no particular weight" with the jury. His sense of the importance (or lack of it) of an improper comment such as the one here involved, derived as it is from the total trial setting and atmosphere, is normally to be preferred to the impression an appellate court can have from reading a record. As we recently observed in *Commonwealth v. Silvis,* 445 Pa. 235, 237, 284 A. 2d 740, 741 (1971) : "control of the prosecution's comments is largely delegated to the discretion of the trial judge."

For these reasons, I respectfully dissent.

Mr. Chief Justice JONES joins in this dissenting opinion.