363 A.2d 1129
**COMMONWEALTH of Pennsylvania**
v.
**Barry P. TUMPSON, Appellant.**

Superior Court of Pennsylvania.
Sept. 27, 1976.

1

---

Barry P. Tumpson, in pro per.

Joseph S. Walko, Dist. Atty., Joseph M. Stanichak, Asst. Dist. Atty., Beaver, for appellee.

HOFFMAN, Judge.

The appellant contends that comments made by the district attorney during his closing argument require a reversal of his conviction and a new trial. Specifically, the appellant argues that the district attorney deliberately attempted to exploit the inference that Squire Cronin, if called, would not have corroborated appellant's testimony, when the district attorney knew that the appellant continuously sought but was unable to subpoena Squire Cronin.[1]

---

1. In view of the disposition of this issue, we need not reach appellant's other contentions.

The appellant, an attorney, went to the Monaca Police Station to assist a client (James Underwood) arrested earlier that day. The deputies on duty, however, denied the appellant access to his client. As a result of appellant's continued efforts to see his client, a scuffle broke out between the deputies and appellant. Appellant was arrested and charged with pointing a deadly weapon, aggravated assault and battery on a police officer, and obstructing an officer in the performance of his duties. A jury convicted appellant of simple assault and battery.

At trial, the deputies testified that they did not know that the appellant was Underwood's attorney. To impeach the deputies' testimony, and to otherwise corroborate the appellant's testimony, appellant desired to call Squire Cronin. At a side bar conference during the presentation of the defense, appellant's counsel informed the district attorney and the lower court that Squire Cronin could not be located. He requested a recess so that the defense could continue its attempt to locate and subpoena Squire Cronin. The district attorney then requested an offer of Squire Cronin's expected testimony: "The offer is this, what Dennis Cronin [Squire] will testify is that he received a telephone call that night, that Saturday evening from Barry Tumpson, who was looking for his client Underwood and that shortly after he talked to Barry Tumpson, he received a call from the deputies asking him to come down to an arraignment and that he said to the deputies—and I think his testimony is that Yaccich [one of the deputies] is the one that called him, 'By the way, Tumpson called here looking for his client.' Basically that's it." The lower court determined that this testimony would affect the credibility of the deputies, an important issue in the case, and granted the recess. The defense was unable to locate Squire Cronin during the recess and the case proceeded without the benefit of his testimony.

During closing arguments, however, the district attorney commented upon Squire Cronin's absence and appellant's counsel objected:

"Mr. Hudacsek [appellant's counsel]: I take very specific expection to the District Attorney's question, 'Where is J. P. Cronin, wasn't he brought here under subpoena?' The District Attorney is well-aware of the efforts I have made to get him here. I made everything a part of this record. I didn't ask for a continuance. We recessed early, at 11:30, in an attempt to get him here and I think in view of his knowledge it is completely prejudicial. I would ask some instruction be given to the jury, not a mistrial.

"Mr. Sadecky [district attorney]: Your Honor, I didn't think the remark was improper or I wouldn't have made it. He had the same opportunity to subpoena witnesses that we did. For some reason this witness wasn't subpoenaed. I don't know why. I can't comment on the fact as to why a witness isn't called or there is evidence that he may shed some light on the Defendant's innocence. Why can't I do that when the defense can do the same thing in their argument in this case?

"The Court: Didn't Mr. Hudacsek mention him in his argument?

"Mr. Hudacsek: Yes, sir. It is my argument, sir that he called the police station and the Ambridge Police Station. He then called the squire and then he called back to the police station.

"Mr. Sadecky: It is only responsive to that.

"Mr. Hudacsek: What I am saying is to argue in that vein after the offer I made and the desire I had as counsel for Mr. Tumpson to have this witness here sheds a different light on it completely. I made an attempt. I had Albert Dudash all this morning trying to get in touch with this man."

Although the lower court concluded that the district attorney's statement was improper, it held that the statement "did not prejudice the defendant nor deny him a fair trial", and therefore, it did not give the requested curative instruction.

It is well-established that "[a] district attorney holds an office of unusual responsibility, and he must exercise his duties with complete impartiality." *Commonwealth v. Toth*, 455 Pa. 154, 158, 314 A.2d 275, 277 (1974). See also, *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Wiggins*, 231 Pa.Super, 71, 328 A.2d 520 (1974). " 'The district attorney is a quasi-judicial officer. He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers, as it is to see that no guilty man escapes. Hence, he should act impartially. He should present the commonwealth's case fairly, and should not press upon the jury any deductions from the evidence that are not strictly legitimate. . . .' *Commonwealth v. Nicely*, 130 Pa. 261, 18 A. 737." *Commonwealth v. Toth*, supra 455 Pa. at 158–159, 314 A.2d at 278, quoting *Commonwealth v. Bubnis*, 197 Pa. 542, 550, 551, 47 A. 748, 749, 750 (1901). See also, *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973); *Commonwealth v. Toney*, 439 Pa. 173, 266 A.2d 732 (1970).

The American Bar Association Project on Standards for Criminal Justice, The Prosecution Function and Defense Function § 5.8 (Approved Draft) provides that "(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor *intentionally* to misstate the evidence *or mislead the jury as to inferences it may draw*." (Emphasis supplied). In the instant case, it is clear that the district attorney intentionally misled the jury as to

the inference it could draw from the absence of Squire Cronin's testimony.

We recognize that the ABA provisions are standards, not legal principles and a violation of these provisions is not per se reversible error. *Commonwealth v. Pfaff*, 233 Pa.Super. 153, 335 A.2d 751 (1975). We believe, however, that the instant case is controlled by *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974). In *Martinolich*, the prosecutor, knowing a witness, if called, would refuse to testify, mentioned to the jury in closing argument that the appellant had not called the witness to verify his version of the incident in question. Thus, the prosecutor attempted to exploit the inference that the witness would not corroborate the appellant's testimony. The Court held that the prejudice resulting from the comment was neutralized by the trial court's immediate admonition and subsequent charge to the jury.

In the instant case, the determination of appellant's guilt was essentially a question of credibility: did the jury believe the deputies or the appellant. The inference that Squire Cronin would corroborate the deputies' and not the appellant's testimony was most prejudicial. The deliberate attempt to mislead the jury regarding this inference cannot be condoned. Because the prejudice was not neutralized by an immediate warning or subsequent charge to the jury, we reverse and remand for a new trial.

Judgment of sentence reversed and case remanded for a new trial.

SPAETH, J., did not participate in the consideration or decision of this case.

JACOBS, J., dissents.