441 A.2d 431

COMMONWEALTH of Pennsylvania

v.

Thomas D. HENSLEY, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 28, 1981.

Filed Feb. 12, 1982.

Alphonse P. Lepore, Jr., Uniontown, for appellant.

Gerald R. Solomon, District Attorney, Uniontown, for Commonwealth, appellee.

Before SPAETH, HESTER and SHERTZ, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for criminal homicide, 18 Pa.C.S.A. § 2502. Appellant argues that he should be discharged because he was denied his right under

Rule 1100 to a speedy trial, and because "the verdict was against the evidence, the weight of the evidence and the law." In the alternative, appellant argues that he should be granted a new trial because he was not permitted to impeach an important Commonwealth witness by proving the witness's prior contradictory statements. We are not persuaded by appellant's arguments for a discharge, but we are persuaded that impeachment should have been permitted. We therefore vacate the judgment of sentence and remand for a new trial.

The charges arise from the shooting to death of two brothers, Charles and Frank Burnsworth. Appellant is married to Charles's and Frank's sister, Dora Jean. All the persons involved in the shooting live near one another in the area of Mill Run, Pennsylvania. On July 25, 1979, Dora Jean and Debra, Charles's wife, had a fight, apparently over getting water from a nearby reservoir. By the time appellant, Charles, and Frank got home that evening, they had heard about the fight, and were angry about it. Charles approached appellant's house, which was across from his. He was followed by Frank. Gunfire broke out. When it was over, appellant had shot and killed Charles. Frank was severely wounded and died later at a hospital. Appellant immediately left with his wife and child and turned himself over to the police. He gave the police his shotgun and said he was turning himself in to protect himself and his family. He signed a statement that he had shot Charles because Charles had been shooting at him.

In January 1980 appellant was tried on two counts of criminal homicide, one count charging him with the death of Charles, the other, with the death of Frank. The trial ended in a mistrial when the jury was unable to agree on a verdict. In August 1980 appellant was retried. On the count charging him with the death of Charles, the jury returned a verdict, but on the count charging him with the death of Frank, the jury was again unable to agree on a verdict. Timely post-verdict motions were filed, raising the same issues now argued to us. On January 2, 1981, the lower

court filed an opinion and order denying the motions, and on January 16, 1981, imposed sentence.

1

Pa.R.Crim.P. 1100(e)(1) provides that "[w]hen a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within one hundred and twenty (120) days after the date of the order granting a new trial." This provision is applicable when, as here, a trial ends in a mistrial because the jury was unable to agree on a verdict. *Commonwealth v. Manley*, 491 Pa. 461, 421 A.2d 636 (1980). Appellant's retrial therefore had to commence within 120 days of the January mistrial, or by May 15, 1980.

On May 1, 1980, appellant requested a continuance to allow new counsel to prepare his defense. Incident to this request, appellant signed a waiver of his Rule 1100 rights. Although this waiver was defective because it failed to state the period of the continuance, *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978), this defect was cured when the court advised appellant on the record of his right under Rule 1100 to a speedy trial, and appellant agreed to a trial date during the first week of July.

On July 7 the court informed counsel that it was unable because of other business to proceed with the trial. As a result, the trial was continued until August 4, 1980. Appellant argues that because this was done without his having signed a waiver of his Rule 1100 rights, he should be discharged. This argument is without merit, for appellant consented on the record to the continuance:

Q. [By appellant's counsel] The Court has said that because of other commitments, they are unavailable to try this case this week. Have you heard that?

A. Yes, sir.

Q. And the Court is willing to continue this case until the August Term of Court, that would be the first full week in August. Have you heard that?

A. Yes, sir.

Q. That would begin August 3 through August 8—

THE COURT: August 4.

Q. I'm sorry, August 4th through the 8th. Do you, Tom, have any objection to the Judge continuing this case until then?

A. No, sir.

Q. You do understand what the continuance is, they're setting trial back?

A. Yes, sir.

Q. You understand that on Rule 1100 they must try you within a certain period of time?

A. I think so, yes, sir.

Q. You understand that the continuance during this period of time will not be counted against that rule?

A. Yes, sir.

N.T. 7/7/80 at 9.

Appellant was also questioned by the prosecutor and the court as to his understanding of his Rule 1100 rights. In these circumstances we are satisfied that appellant has no basis to complain now that his right to a speedy trial was violated.[1]

## 2

Appellant argues that "the verdict was against the evidence, the weight of the evidence, and the law" because the Commonwealth's only eyewitness to the shooting, Debra Burnsworth, Charles's wife, gave testimony inconsistent with her testimony at the preliminary hearing, and because the police "systematically left [the case] uninvestigated." Brief for Appellant at 10, 11.

We acknowledge that Debra Burnsworth's testimony at trial was indeed inconsistent with her testimony at the preliminary hearing. Appellant proved, by calling the mag-

1. Appellant argues that the time from July 7 to August 4 should not be excluded from the 120 day period because the Commonwealth failed to file a petition for extension of time and to show, incident to the petition, that despite due diligence, it was unable to try appellant within 120 days. The Commonwealth's diligence is not at issue, as appellant waived his Rule 1100 rights.

istrate, that at the preliminary hearing she had said she was not in a position to see, and did not see, the shooting. No doubt this might have persuaded the jury to disbelieve her testimony at trial that she had seen appellant shoot her husband Charles. But it did not, as the jury's verdict shows. If this were a case where the witness's testimony at trial was so inconsistent that the jury had to guess at the truth, we should find the evidence insufficient. *Commonwealth v. Bennett,* 224 Pa.Superior Ct. 238, 303 A.2d 220 (1978). But here the witness's testimony at trial was consistent. The jury saw her give that testimony, and it was within the jury's province to decide that she was telling the truth, *Commonwealth v. Rankin,* 441 Pa. 401, 272 A.2d 886 (1971), even though it would seem that if she told the truth at trial, she did not at the preliminary hearing.

Similarly, it was for the jury to decide whether the manner in which the police investigated the case raised a doubt about appellant's guilt. By a neutron activation test, made of appellant's hands, the police determined that he had fired a gun. Appellant's argument is that this test was superfluous—he had, after all, *told* the police that he had fired his shotgun—and that what the police should have done was make a test to determine whether Charles or Frank Burnsworth had fired a gun. This argument has considerable force. For in his statement, appellant had told the police that he had fired in self-defense. Common sense suggests that if neutron activation tests were to be conducted, they should have included those who appellant said had fired on him. Then the police would, it seems likely, have had either a powerful corroboration or contradiction of appellant's statement. But that does not mean that we may declare the verdict "contrary to the weight of the evidence," as appellant argues we should. Brief for Appellant at 11. It is not our role to tell the police how to investigate a case. Rather, we are to decide whether the evidence that *was* found by the police and introduced at trial was sufficient. Nor are we persuaded by appellant's argument that the verdict should be set aside as "shocking to the judicial

conscience." *Id.* We do not mean to exclude the possibility that in another case we might find an investigation so inadequate as to represent a denial of due process. We only say that on the record here we find no such denial. The police did examine the front of appellant's house, and found no evidence that it had been hit by gunfire, which one would expect it to have been, if indeed, as appellant said, Charles Burnsworth had fired at him some 15 times. The jury knew that the police had not ordered neutron activation tests to determine whether Charles or Frank Burnsworth had fired a gun, for appellant developed that point at trial. Sometimes, one may be sure, a jury acquits because it is dissatisfied with a police investigation. And the jury might have done so here. But if a jury believes a witness, like Debra Burnsworth, who says she saw the shooting, it may convict. Appellant says that the police "systematically left [the case] uninvestigated," and "set out to convict a man and accomplished their end." Brief for Appellant at 11. Unhappily, there have been such cases. *Cf. Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). But the record does not show that this is one.

3

Jesse Burnsworth, father of Charles and Frank, testified at both appellant's first and second trial. At appellant's first trial, appellant's counsel elicited the following testimony from him:

Q. Without telling us what somebody else was talking about, did you know—did you hear of some spent shells that were taken from Chuck's [Charles's] porch—

A. No, I didn't.

Q. —and hidden?

A. Not at that time, no.

Q. And later did you?

A. Yes, sir.

N.T. 310.

At appellant's second trial, Mr. Burnsworth testified differently:

Q. [By appellant's counsel]  Did anyone say anything to you about—did anyone say anything to you about shells?

A. No, no one said anything.

Q. Did you say, at a prior hearing, that someone mentioned some shells around Chuck's body?

A. What's that?

Q. Did you say, at a prior proceeding, that someone had mentioned something to you about shells being around Chuck's body.

A. No, I did not.

Q. You did not.  Are you sure of that?

A. I am sure of that.

N.T. 251–52.

When appellant's counsel sought to impeach Mr. Burnsworth by proving his prior testimony, the lower court sustained the Commonwealth's objection and did not permit the impeachment.  In its opinion, the court explained this ruling as follows:

At that trial [the first trial], the witness was asked if he heard of spent shells being removed from the porch where the body of decedent Charles Burnsworth was located.  The witness replied no, but indicated that he was so informed at a later point in time.

At the present trial, the witness was again questioned about the events surrounding the first time he saw the decedent's body.  The witness was asked if anyone informed him of shells near the decedent, to which he replied no.  At no time, however, was the witness questioned about information he may have received at a subsequent time.

Consequently, this Court can find no error in refusing to admit the prior testimony of the witness.  The answers given at the prior proceeding dealt with a distinctly different point in time than that period about which the witness was questioned at the present trial.  Therefore, the answers given by the witness were not inconsistent.

Slip op. at 4

■ We are unable to accept this explanation. The record does not support but, rather, contradicts the court's statement that the questions at the first trial "dealt with a distinctly different point in time" than did the questions at the second trial. At the second trial, Mr. Burnsworth was asked, "[D]id anyone say anything to you about shells?" This was a general question, which gave Mr. Burnsworth no reason to assume that counsel meant to limit his inquiry to the time of the incident itself. Further, if Mr. Burnsworth did make such an assumption, it should have been dispelled by counsel's next question, asking whether at the first trial, he had said that "someone mentioned some shells near Chuck's body." At the first trial, Mr. Burnsworth had said that someone had mentioned that there had been spent shells near Charles's body, *not* at the time of the shooting but *later*. It is thus clear that at the second trial counsel was directing Mr. Burnsworth's attention to the very same period as at the first trial. It is equally clear that Mr. Burnsworth flatly contradicted his prior testimony.

It is long settled that a prior inconsistent statement may be used to impeach a witness. *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Tucker*, 452 Pa. 584, 307 A.2d 245 (1973); *Commonwealth v. Loar*, 264 Pa.Superior Ct. 398, 412, 399 A.2d 1110, 1117 (1979). Here, the lower court's error in not permitting impeachment requires the grant of a new trial. Mr. Burnsworth was an important witness. He testified that appellant had threatened to "give [Charles] a bellyful of lead" if he raised the issue of the women's fight, thus contradicting appellant's claim that he did not provoke Charles but that Charles started the shooting because he was angry about the women's fight. N.T. 237. Also, Mr. Burnsworth was among the first to arrive at the scene of the shooting. He testified that there were no shells near Charles's body. This was particularly damaging to appellant's claim that Charles had shot at him. Had the jury known that Mr. Burnsworth had said at the first trial that someone had said that there were spent

shells near Charles's body,[2] they might have decided not to believe him. As we have mentioned, Debra Burnsworth was the only eyewitness called by the Commonwealth, and her prior testimony was inconsistent. If Mr. Burnsworth had also been impeached, the verdict might have been different. At least, it was different at the first trial, when the jury heard about spent shells near Charles's body. In any event, the lower court's error in not permitting impeachment cannot be declared harmless.

The judgment of sentence is reversed, and the case is remanded for a new trial.

HESTER, J., files a dissenting statement.

The decision in this case was rendered prior to SHERTZ, J., leaving the bench of the Superior Court of Pennsylvania.

HESTER, Judge, dissenting:

I respectfully dissent. I would affirm on the Opinion of Judge Capuzzi of the court below.

---

**2.** We need not decide whether Mr. Burnsworth's testimony at the first trial was admissible at the second trial for the truth, for appellant only sought its admission for impeachment. *But see Commonwealth v. Loar, supra* (prior inconsistent statement admissible for truth where declarant testifies and is subject to cross-examination).