466 A.2d 148

**COMMONWEALTH of Pennsylvania**

v.

**Ricky HICKMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1983.

Filed Sept. 2, 1983.

Reargument En Banc Denied Oct. 25, 1983.

Petition for Allowance of Appeal Denied Feb. 3, 1984.

---

Arthur Henry James, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County entered against the appellant, Ricky Hickman. Appellant was convicted, after a jury trial, of one count of robbery.[1] After the denial of post-verdict motions, the appellant was sentenced to seven and one half (7½) to twenty (20) years imprisonment; said sentence precipitating the present appeal.

Three issues are raised by the appellant herein. He contends that he was deprived of a fair trial because of improper remarks made by the district attorney during the trial, particulary in the examination of witnesses and in his closing statement. He also contends that he was denied his right to be judged by a jury of his peers by reason of the district attorney's use of his peremptory challenges to exclude all black veniremen from the jury panel. Finally, he contends that he was prejudiced by the answer of a Commonwealth witness which related another crime committed by the defendant, and that the trial court erred in denying his motion for mistrial on this point. Because we agree that the appellant was deprived of a fair trial because of the remarks made by the district attorney throughout the trial, it is not necessary to consider the other issues. We therefore vacate the judgment of sentence and remand for a new trial.

The relevant facts are as follows. On December 13, 1979, at approximately 5:30—6:00 P.M., James Harris, the manager of a paint store in West Philadelphia, was depositing the daily receipts in the night depository of a branch office of the Central Penn National Bank. When Harris got out of his vehicle to deposit the receipts, a man holding a gun told

1. 18 Pa.C.S.A. § 3701(a).

him to hand over the money. Harris turned and looked at the man for approximately five (5) to eight (8) seconds. After Harris relinquished the money, the man told him to get in the car and drive away. Harris then drove to a gas station and reported the incident to the police.

The next day Harris was relating the details of the incident to a local patrolman in front of the paint store. At that time the appellant drove by and parked down the street. Harris said to the patrolman, "[t]hat's the guy who robbed me." The patrolman then took the appellant into custody.

At trial, the Commonwealth introduced the identification testimony of Harris. Defense counsel countered with an attack on the identification based on the circumstances under which it took place (rainy, twilight) and on Harris' description of the facial hair of the perpetrator. The appellant also produced the alibi testimony of his mother, his girlfriend, his girlfriend's father and girlfriend's nephew.

Although the issues in this case were not complex, the proceedings were disproportionately protracted, to the extent of some five hundred (500) pages of transcript. One reason for this was a rather lengthy and disputed jury selection process which, and we say this only speculatively, might have stirred up some animosity between the district attorney and defense counsel. We mention this only to presage the verbal sparring which later occurred.

Turning to the law which is relevant to our inquiry, in *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), the court held that:

> Every unwise or irrelevant remark made in the course of a trial by a judge, a witness or counsel does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. (Citation omitted). *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957).

The supreme court has also said that "[t]he language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). " '[A] prosecutor may not express his personal opinion regarding a defendant's guilt or credibility and, in doing so, clearly and improperly intrudes upon the jury's exclusive function of evaluating the credibility of the witness.' *Commonwealth v. Gilman,* 470 Pa. 179 at 180 and 191, 368 A.2d 253 at 258 and 259 (1977)." *Commonwealth v. Swift,* 291 Pa.Super. 90, 95, 435 A.2d 234, 236 (1981). "When the cumulative effect of improper remarks so prejudices the jury as to prevent a fair trial, a motion for mistrial must be granted." *Commonwealth v. Baranyai,* 296 Pa.Super. 342, 348, 442 A.2d 800, 803 (1982). The proper action to be taken is a matter within the discretion of the trial court. *Commonwealth v. Stoltzfus, supra.*

■ Our review of the transcript of the trial convinces us that the cumulative effect of the district attorney's improper remarks hindered the appellant's ability to receive a fair trial. The preeminent purpose of the trial—the determination of the guilt or innocence of the accused—was subordinated to, or rather overshadowed by, the histrionics of the district attorney.

The most serious breach of the district attorney's duty to refrain from improper remarks occurred during the cross-examination of James Harris, when defense counsel was attacking his description of the robber which was given to the police after the incident:

BY MR. JAMES:

Q. Now, sir, do you know what two or three day's growth of beard is? You said—strike that question.

Would you say that man has two or three days' growth of beard?

MR. CARPENTER: Objection.

THE COURT: Overruled.

MR. JAMES: You may answer the question.

MR. CARPENTER: Let him see the man. Come on over so he can see you. Get 5 feet [away] and point a gun in his face.

(N.T. 287). The district attorney's statement was directed toward the defendant in the presence of the jury, and clearly demonstrates his preconceived notion of the defendant's guilt. Defense counsel immediately raised an objection which was sustained by the trial judge, who also issued an instruction to disregard the comment. Defense also renewed a motion for mistrial which he had previously made. The trial court denied the motion. (N.T. 288).

If this were an isolated instance in the course of extended proceedings, we perhaps would consider the trial judge's instruction sufficient to dispel the prejudice to the defendant. However, that instance followed closely an exchange between the district attorney and the witness, Harris, which defense counsel contends was also prejudicial.

Q. Do you think it's usual for a person to go around taking other people's money at gunpoint?

MR. JAMES: Objection.

THE COURT: Sustained.

Q. Isn't that also—

MR. JAMES: Objection

THE COURT: Mr. Carpenter—

MR. CARPENTER: Your Honor—

THE COURT: It's argumentative.

MR. CARPENTER: Wasn't it when defense counsel asked?

THE COURT: Just one moment. I made a ruling. You will abide by the ruling.

Q. Do you think that's the usual practice, for normal human beings to go robbing people at gunpoint?

MR. JAMES: Objection.

THE COURT: The objection is sustained.

Q. Is there any reason to assume that a holdup man is going to be a normal person?

MR. JAMES: Objection.

THE COURT: Sustained. Sustained.

(N.T. 284–285)

Again we do not see this exchange as being prejudicial *per se;* however, in conjunction with the district attorney's other remarks, it contributes to a showing of the district attorney's predisposition toward the defendant. This predisposition is also demonstrated in other remarks by the district attorney,[2] who repeatedly made irrelevant remarks despite the attempts by the trial judge to end this behavior.

■ The defendant was also prejudiced by the comments made by the district attorney in his closing argument. In discussing the alibi testimony of the appellant's girlfriend, Carol Stokes, he stated that defense counsel was "coaching the witness." (N.T. 431), and goes on to assert "[n]ow, she didn't make any mistake. That was her story. Now, apparently she didn't get her story straight with the others." (N.T. 431). Another time, speaking in reference to all of the appellant's alibi witnesses, he says, "they are talking about something that is coming out of their imaginations." (N.T. 434). Finally, in commenting on the alibi testimony of Christopher Ramsey, the nephew of Carol Stokes, he said "Of course, the young man will say—you can infer from his testimony that he would say anything you want." He also said, "[a]nd you can conclude also that he's not just wrong, that he's lying." (N.T. 437).

These comments on the credibility of the defendant's witnesses were unnecessarily prejudicial. The fact that the

---

2. In addition to the above-quoted remarks, the district attorney made several comments which connoted a lack of respect for defense counsel. At one point he interjected a response to the defense counsel's request to the court to mark an exhibit, saying, "you can mark it Mona Lisa as far as I'm concerned. I don't care." (N.T. 293). Later on redirect examination of the witness Harris, again with regard to the identification and defense counsel's attempt to cast doubt on Harris' testimony, he said, "Now, defense counsel, you may have trouble describing beards; perhaps some other people have trouble reading." (N.T. 295) This comment drew a strong admonishment from the judge. Finally, we note that the district attorney would often make comments which, while not prejudicial in themselves, were not appropriate in a judicial proceeding. (N.T. 263, 265, 273, 274, 290, 291, 324, 372).

district attorney used the terms "you can infer" and "you can conclude" does not diminish the overall prejudicial effect of his comments on the witnesses' credibility. And, although the prosecutor may comment on the evidence and any inferences fairly derived from that evidence, the present remarks go beyond anything that could be considered fair comment. The district attorney's allegations of "coaching" and the witnesses fabricating an alibi are purely conjecture unsupported by any evidence.

■ We conclude that the cumulative effect of the district attorney's remarks so prejudiced the appellant that a fair trial was impossible. The status of the district attorney as an officer of the court places him in a position of trust with the responsibility to fairly and objectively prosecute criminals. It is in this light that he or she is seen by the jury, and, as such, his or her remarks are given weight by the members of the jury in reaching their determination. In the present case, the jury could not help but be swayed by the district attorney's remarks on the guilt of the defendant as well as on the credibility of his witnesses. Accordingly, the judgment of sentence is vacated and the case remanded for a new trial.

Vacated and remanded. Jurisdiction is not retained.

POPOVICH, J., concurs in the result.