498 A.2d 378

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John HARVEY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 3, 1985.

Filed Aug. 9, 1985.

Reargument Denied Oct. 8, 1985.

Pamela P. Cohen, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

CAVANAUGH, Judge:

John Harvey appeals from the judgment of the Philadelphia County Court of Common Pleas imposing concurrent

sentences of life imprisonment and from two and one half to five years on convictions for first degree murder and possession of an instrument of crime. These convictions arise from the strangulation death of Denise Madison on February 4, 1983. In a bench trial the appellant contended that the victim had been choking on an unknown object and that he had accidentally strangled her in an attempt to remove the obstruction from her throat. On appeal, Harvey presents two issues for our consideration: (1) whether he was prejudiced at trial by misconduct on the part of the prosecutor? and (2) whether the evidence was sufficient to sustain his conviction for first degree murder? For the reasons set forth in this opinion, we vacate the sentences imposed and remand for a new trial.

The tendency in our courts has been to afford to the prosecutor a fair degree of latitude in trying criminal defendants. As it is often stated, not every intemperate, irrelevant, unwise or improper remark by a prosecuting attorney is grounds for a mistrial. *See, e.g., Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984); *Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980); *Commonwealth v. Green,* 321 Pa.Super. 246, 467 A.2d 1346 (1983). "Although a prosecutor's statement may be inappropriate, a new trial will not be granted unless it is inevitable that the prosecutor's remark prejudices the defendant to such a degree that it prevents the jury from weighing the evidence and rendering a true verdict." *Maxwell,* 505 Pa. at 166, 477 A.2d at 1316–17 (citing *Commonwealth v. Upsher,* 497 Pa. 621, 627, 444 A.2d 90, 92 (1982)). Where the defendant is tried before a judge sitting alone, the standard for proving harm from prosecutorial transgressions is perhaps even more stringent, for the law of this Commonwealth frequently presumes that the trial judge will disregard any inadmissible evidence or improper argument. *See Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Glover,* 266 Pa.Super. 531, 405 A.2d 945 (1979).

Nevertheless, "[t]here are times when evidence is so prejudicial that we cannot assume that the trier of fact will be able to put the evidence aside and arrive at an impartial adjudication." *Commonwealth v. Conti*, 236 Pa.Super. 488, 495, 345 A.2d 238, 242 (1975). As the court in *Conti* stated, "judges are subject to the same emotions and human frailties as affect all persons, lay jurors or not." *Id.*, 236 Pa.Superior Ct. at 499, 345 A.2d at 244. This court in *Conti* reviewed the rationale underlying a rule of presumed judicial detachment. In conclusion we said:

It is plain from the cases cited that in some instances due process requires that we not simply rely on the fiction of a judicial blindside. It is also plain, when cases like *Berkery* [200 Pa.Super. 626, 190 A.2d 572 (1963) ] and *Mangan* [220 Pa.Super. 54, 281 A.2d 666 (1971) ] are compared with cases like *Rivers* [218 Pa.Super. 184, 279 A.2d 766 (1971) ], that at least in Pennsylvania no fixed rule has been announced for determining when a trial judge will be regarded as having been able to maintain his impartiality after hearing incompetent evidence. We do not undertake to announce such a rule now. Instead, we shall continue to decide each case according to its particular facts. In so doing, however, we do explicitly recognize that two factors will be considered of critical import. One factor will be the inherently prejudicial quality of the specific evidence involved. This, as indicated, was determinative in *Rivers*. There the evidence was "so prejudicial" that the risk of improper adjudication could not be ignored. In contrast, when the risk is not of emotional impact but rather of intellectual error in tracing a chain of inferences or in recognizing the pitfalls of double hearsay, greater weight will be given to judicial expertise. *See* Levin and Cohen, [The Exclusionary Rules in Nonjury Criminal Cases, 119 U.Pa.L.Rev. 905 (1971) ]; Davis, [Hearsay in Nonjury Cases, 83 Harv.L.Rev. 1362 (1970) ]. The other factor will be the importance of the evidence to the particular case. Suffice it to say that when, as in *Berkery*, the other evidence is overwhelming,

we shall be less sensitive to the risk of harmful prejudice below.

*Conti,* 236 Pa.Super. at 501, 345 A.2d at 245.

■ Furthermore, it is the burden of the Commonwealth to establish that its misconduct did not affect the outcome of the trial. *See Commonwealth v. Bricker,* 506 Pa. 571, 589–591, 487 A.2d 346, 355 (1985). The supreme court has outlined the reviewing court's inquiry:

We must first be able to declare a belief that the error was harmless beyond a reasonable doubt before it will be held harmless and a judgment of sentence affirmed. Furthermore, the burden of establishing that the error was harmless beyond a reasonable doubt must be borne by the prosecution. Applying this two part analysis in *Davis* we said that if there is a reasonable possibility that the error "might have contributed to the conviction ... might have moved 'the minds of an average jury' toward conviction ..." the error cannot be held harmless.

*Commonwealth v. Collins,* 462 Pa. 495, 503, 341 A.2d 492, 495 (1975) (quoting *Commonwealth v. Davis,* 452 Pa. 171, 177, 305 A.2d 715, 719 (1973) (footnote omitted)).

In the present case, our review of the record indicates that the misconduct of the prosecutor may have had serious consequences in unfairly prejudicing the judge and denying the appellant his right to a fair trial. Just as the supreme court found in *Collins,*

[a] reading of the record discloses that the misconduct of the prosecutor was not limited to isolated moments of error in the heat of trial advocacy. The record is replete with instances of prosecutorial misconduct which permit only one reasonable conclusion: from the very beginning of the trial, the prosecutor adopted a strategy calculated to try the case on his own terms rather than within the rules of evidence and the standards of professional conduct.

*Commonwealth v. Collins,* 462 Pa. at 499, 341 A.2d at 493. Moreover, the misconduct of the prosecutor in this case was "so prejudicial" that we cannot assume that the trial judge

242

was unaffected. As distinguished by the court in *Conti*, the impact of many of the instances of prosecutorial misconduct here was of a highly emotional nature rather than being confined to matters of the intellect. Thus, on the particular facts of this case, it is not sufficient to rely merely on an unchallenged presumption of judicial detachment as argued by the Commonwealth.

■ Our prosecuting attorneys are vested and bound by certain obligations inherent in their position.

> "The district attorney is a quasi judicial officer. He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers, as it is to see that no guilty man escapes. Hence, he should act impartially. He should present the Commonwealth's case fairly, and should not press upon the jury any deductions from the evidence that are not strictly legitimate...."
> *Commonwealth v. Nicely,* 130 Pa. 261, 18 A. 737 [ (1889) ].

*Commonwealth v. Tumpson,* 242 Pa.Super. 1, 5, 363 A.2d 1129, 1131 (1976) (quoting *Commonwealth v. Toth,* 455 Pa. 154, 158–59, 314 A.2d 275, 278 (1974)). *See also Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972). In accord with this view our courts have expressly adopted the ABA Standards Relating to the Prosecution Function. *See Commonwealth v. Starks,* 479 Pa. 51, 387 A.2d 829 (1978). Those Standards provide in part:

Presentation of evidence

. . . .

(b) It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.

. . . .

ABA Standards for Criminal Justice, The Prosecution Function, § 5.6 (1982) [hereinafter ABA Standards].

## Argument to the jury

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

. . . .

*Id.* § 5.8. Although this latter section relates specifically to argument to the jury, we feel that its admonitions to prosecutors apply also in non-jury cases, particularly where the misconduct reaches the level contemplated in *Conti.*

Prosecutors are expressly directed "not [to] use arguments calculated to inflame the passions or prejudices of the jury." *Commonwealth v. Bricker,* 506 Pa. 571, 586, 487 A.2d 346, 353 (1985) (quoting ABA Standards § 5.8(c)). They are further admonished to "refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law...." ABA Standards § 5.8(d). *See Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975). In spite of these controlling standards of permissible trial conduct, the assistant

district attorney engaged in the following exchanges on cross-examination of the appellant:

Q   So that you were able to, as it were, con and deceive people and by stealth remove this quantity of money, were you not?[1]

A   No, sir.

Q   You were honest with the people in the way that you removed the money?

A   No, sir.   I pled guilty.

Q   Did you put on any kind of act or lie to them in any way in order to get into the vault and remove, how much was it, $30,000 or $50,000 altogether?

A   I don't really remember.

Q   But you did some pretty fast talking, didn't you, sir?

A   Repeat that?

Q   I say you did some pretty fast and slick talking, didn't you, to get into that vault to get that $30,000 or $50,000, whatever it was?

A   No, there was no talking done.

Q   Did you have to cry for them or anything or put on any kind of act of any kind as part of your deception to obtain this money?

A   No, sir.

Q   But you did con them into getting into that vault, did you not, sir?

   MR. PHILLIPS:  Objection.

   THE COURT:  Yes.   Sustained.

. . . .

Q   Sir, let me ask you this question:  When you heard the testimony that that heroin that you were so concerned about, that she didn't swallow it but it fell down behind that bureau, didn't you say to yourself, "Oh, I killed a woman for nothing."   Did you realize that, sir?

---

**1.**   On direct examination, the appellant testified that in 1975 he pleaded guilty and was sentenced for two bank larcenies.  Those charges, accordingly, were not before the court in the instant litigation.

A  I didn't kill her.  I loved Denise.  I didn't kill her.  I was trying to help her.

Q  Sir, is this the way you express your love?  You put this thing around her neck?  Did you, sir?

A  Not with the intention to kill her.

Q  Did you put it around her neck, sir?

A  Yes, sir.

Q  And when you squeezed it, sir, as the doctor said, with enough force to put a half-inch groove all the way around her neck and crush the organs of her neck, was that an expression of your love, sir, for this woman that you are crying about?  Is that the manner in which you express love, sir?

. . . .

Q  Now, sir, when you were applying that kind of pressure that the doctor described, crushing, putting a 1-inch groove in her neck and crushing the organs of her neck so that she couldn't breathe and she was spitting up blood, did you cry for her at that time, sir, as you cried for yourself in this courtroom today?

MR. PHILLIPS:  Objection, Your Honor.

THE COURT:  Yes.  Sustained.

. . . .

Q  Of course not saying whether or not you are a heroin addict, but do you know, sir, from your experience of being in drug treatment programs that sometimes heroin addicts when they don't get their heroin and they may have a tremendous hunger for heroin that they will seek it and get desperate in trying to obtain it?  Do you know anything about that, sir?

MR. PHILLIPS:  Objection, Your Honor.

THE COURT:  Yes.  Sustained.

. . . .

Q  Sir, my question to you is this, sir:  Didn't you squeeze her around the neck before she even went to the bathroom with sufficient pressure to bring blood out of her mouth and still weren't satisfied that she didn't have

that heroin in there and when she went to the sink, she spit up to show there was no heroin and the blood came out, and then you brought her back and continued to squeeze until you squeezed the life out of her body? That's what I am talking about, sir.

A   No, sir.

Q   But that didn't happen, did it?

A   No, sir.

Q   No, it didn't happen.   But when you were squeezing, sir, with that ligature and with your hands, didn't you see the blood as you were squeezing and as she was telling you, "Harvey, I can't breathe," and as you were squeezing, didn't you see the blood come out of her mouth from her lungs and her nose when you were squeezing, sir?

. . . .

Q   Sir, let me ask you this: As you were making this valiant attempt to get this unknown thing out of Denise's mouth and you were squeezing, tell me, as you were squeezing with your hands and with this ligature with sufficient force to cause the damage that the doctor described, didn't Denise say anything to you like, "Harvey, you are hurting me.   You are killing me.   I can't breathe.   Stop it"?

A   No, she didn't.

Q   She didn't say that.   And you just kept on squeezing away and she never protested once;   is that right?

A   I didn't squeeze like that.   It wasn't like that.

Q   Oh, I see.   So while you were squeezing, she didn't say one word, not even, "Please, Harvey.   I can't breathe."

In his closing argument to the judge, the prosecutor continued:

What more cruel than to do this to this woman in the presence of that young child?   Do you think that that child is ever going to forget that in his presence his mother met such a grisly death, a death by strangulation? Do you think that that child will ever forget his mother pleading for life?   "Harvey, I can't breathe."

. . . .

Now, if Your Honor thinks that those words will ever leave the mind of that child, then Your Honor is sorely mistaken. Those words are burned into the mind of that child and will be there forever. It will be in that child's nightmares as long as he exists on this planet. He will hear in his mind all his life, "Get off of me, Harvey. Harvey, I can't breathe."

Unquestionably these comments exceeded the permissible bounds of argument as set forth in the ABA Standards and adopted by our courts.

It is firmly settled that "[a] reference, either expressly or by reasonable implication, to prior criminal activity, which does not qualify as a recognized exception to the general rule excluding evidence of an accused's prior criminal convictions ... is impermissible." *Commonwealth v. Percell*, 499 Pa. 589, 592, 454 A.2d 542, 544 (1982) (citing *Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154 (1982); *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Terrell*, 234 Pa.Super. 325, 339 A.2d 112 (1975)). *Accord Commonwealth v. Washington*, 488 Pa. 133, 411 A.2d 490 (1979) ("a testimonial reference indicating to the jury that the accused has been engaged in other criminal activity, denies the accused a fair trial ..."); *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048 (1978) ("Evidence of prior criminal activity ... is probably only equalled by a confession in its prejudicial impact upon a jury"). The import of this rule is no less in non-jury trials:

We have previously held that a trial judge, sitting without a jury, may not consider a defendant's prior criminal record in determining whether defendant is guilty beyond a reasonable doubt of the offense for which he is presently charged.... We also feel that there is little if any reason for relaxing, in non-jury criminal trials, the exclusionary rule that is applied to evidence of defendant's prior criminal record when a jury is the trier of fact.

*In re Johnson*, 445 Pa. 270, 275, 284 A.2d 780, 783 (1971) (citing *Commonwealth v. Oglesby*, 438 Pa. 91, 263 A.2d 419

(1970); Levin & Cohen, *The Exclusionary Rule in Nonjury Criminal Cases,* 119 U.Pa.L.Rev. 905 (1971)). Notwithstanding this evidentiary rule and the clear admonitions against offering inadmissible evidence and asking legally objectionable questions, ABA Standards § 5.6(b), the prosecutor in the present case engaged in the following impermissible cross-examination of the appellant:

Q Have you been under treatment, dope treatment programs?

MR. PHILLIPS: Objection, Your Honor.

THE COURT: Overruled.

A Yes.

Q And that was a halfway house in New Jersey, was it not, sir?

A Yes, sir.

Q As a matter of fact, you were required to report there every night because you were supposedly an inpatient for treatment for drug addictions; isn't that correct, sir?

A Yes, sir.

Q And you were there, as a matter of fact, by order of the Court; isn't that right?

A Yes, sir.

■ "It is long settled that a prior inconsistent statement may be used to impeach a witness." *Commonwealth v. Brown,* 302 Pa.Super. 391, 400, 448 A.2d 1097, 1102 (1982) (quoting *Commonwealth v. Hensley,* 295 Pa.Super. 225, 233, 441 A.2d 431, 435 (1982) (citations omitted)). However, when attempting to discredit a witness' in-court testimony, there must be evidence that the prior inconsistent statement was made or adopted by the witness whose credibility is being impeached. *See Commonwealth v. Baez,* 494 Pa. 388, 431 A.2d 909 (1981); *Commonwealth v. Brown, supra.*

■ At trial in the instant matter, the prosecutor attempted to impeach the appellant on cross-examination by referring to a statement allegedly given by Deborah Parker to the police relating a conversation between her and the appellant. When asked if he had ever spoken to Ms. Parker

about the events of February 4, 1983, however, the appellant unequivocally stated: "I didn't tell her nothing." Nevertheless, in spite of this denial of making a prior statement and notwithstanding the Commonwealth's failure to present extrinsic evidence of those alleged prior statements, the prosecutor posed the following questions to the appellant:

Q   And you didn't tell Deborah Parker that, did you?
A   No, I didn't.
Q   "He could see the heroin in her Adam's apple and he was pushing it up with his hands by squeezing her neck. He said the blood came out of her nose and her mouth." You didn't tell her that?
A   No, sir.

. . . .

Q   Did you tell Deborah Parker that you left 4 grains of heroin on the dresser before you went downstairs and when you came back it was gone?
A   No, I didn't.
Q   Did you tell her that you looked at Niecy and she was trying to swallow the heroin that you had put on the dresser?
A   No, I didn't.
Q   You didn't say that to her.
A   No.
Q   Did you say to her that when you grabbed her by the neck, you could see the heroin in her Adam's apple and that you were pushing it up with your hands, squeezing her by the neck, and then the blood came out of her nose and her mouth and you stuck your hands down her throat and you had two fingers on the bag but you could just not get it?   Did you tell her that?
A   No, I didn't.

. . . .

Q   By the way, you have seen this statement of Deborah Parker, have you not?
A   The first page of it.

Q  You went over it with your lawyer.  Did you read the part in here on Page 4 where she said she didn't believe your story?  "See, I knew because he told me that he murdered her."

MR. PHILLIPS: Objection, Your Honor.

THE COURT: Sustained.

Because the Commonwealth did not offer evidence that the statements allegedly made to Deborah Parker were "made or adopted by the witness whose credibility is being impeached", this mode of cross-examination was plainly improper.  As such, the conduct of the prosecutor was contrary to the ABA Standards which provide: "It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury." ABA Standards § 5.6(b).  *See also* Model Code of Professional Responsibility DR 7–106(C)(1) ("In appearing in his professional capacity before a tribunal, a lawyer shall not: (1) state or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.")

Moreover, in his closing speech before the bench, the assistant district attorney also expressed the following:

If Your Honor please, basically I think what Your Honor has to decide in this case is an issue of credibility. I think what we have is a situation here where either this defendant, John Harvey, is telling the truth or he's not telling the truth.

It is the Commonwealth's position that Mr. Harvey has lied, Your Honor.

. . . .

Again, the absence of something is telling Your Honor something.  The absence of that evidence is saying to Your Honor that Mr. Harvey is not telling the truth. There is no way to escape that.

. . . .

And I think Mr. Harvey's version of what happened, what caused the death of that woman stretches all credulity. And I would say this to Your Honor, that this is also a case where the absence of evidence makes Mr. Harvey out to be less than a teller of truth.

It is clearly improper for the prosecuting attorney "to express his personal belief or opinion as to the truth or falsity of any testimony or evidence on the guilt of the defendant." ABA Standards § 5.8(b). *See also Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985) (it is misconduct for a prosecutor to express a personal opinion of a defendant's guilt or credibility); *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971); *Commonwealth v. Hickman*, 319 Pa.Super. 261, 466 A.2d 148 (1983). *Accord* Model Code of Professional Responsibility DR 7–106(C)(4) ("In appearing in his professional capacity before a tribunal, a lawyer shall not: ... (4) assert his personal opinion ... as to the credibility of a witness, ... or as to the guilt or innocence of an accused....").

Finally, yet another episode of prosecutorial misconduct transpired during the assistant district attorney's closing argument when he propounded the following:

Now, I think Your Honor that if this heroin belonged to this defendant, and if as the child said when he went upstairs, this woman was coughing for whatever reason people sometimes cough, goes over to the bureau, and there is no heroin because it fell down behind the bureau, this woman is coughing, this man has a hunger for heroin in a paranoia that goes along with it might have in his mind conceived the idea that she had taken this heroin into her mouth either to swallow it or to hide it or for whatever reason. And in his paranoia and in his heroin starvation paranoia, he wouldn't accept any explanation, "I don't have any. Look, there's nothing in my mouth."

The only reference to the appellant's alleged use of heroin came on cross-examination by the prosecution:

Q   Sir, at this time you were a heroin addict, were you not?

A   I never was a heroin addict.

Q   Sir, are you saying that you have no background in terms of heroin?

MR. PHILLIPS: Objection.  He said he never was a heroin addict, Your Honor.

THE COURT: That is sustained.

In light of this unequivocal denial of heroin addiction, the prosecutor's argument that the appellant was acting "in his heroin starvation paranoia" is plainly beyond the realm of "reasonable inferences from the record" and also goes beyond the central issues in the case.  *See* ABA Standards § 5.8(a), (c).  *See also Commonwealth v. Bricker,* 506 Pa. 571, 487 A.2d 346 (1985) (a prosecutor must limit statements to facts in evidence and legitimate inferences therefrom); *Commonwealth v. Starks,* 479 Pa. 51, 387 A.2d 829 (1978) ("the fact that an issue is before the jury does not justify counsel's over-emphasis of an illegal and socially reprehensible activity in a manner calculated to arouse the prejudice of the jury in resolving the ultimate issue of the guilt or innocence of the defendant with respect to the murder and firearm charges"); *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976) (new trial required where prosecutor in his closing argument ascribed to a homicide defendant a motive that could not reasonably be drawn from the evidence).

We agree with the court in *Commonwealth v. Starks* "that the district attorney must have 'reasonable latitude in fairly presenting a case to the jury, and that the trial judge must have reasonable discretion in deciding whether the bounds of propriety have been exceeded.' "  479 Pa. at 59, 387 A.2d at 833 (quoting *Commonwealth v. Cronin,* 464 Pa. 138, 143, 346 A.2d 59, 62 (1975)).  We also acknowledge that perhaps latitude may be broader in cases tried before a judge alone.  Nevertheless, as the court concluded in *Starks,* "we cannot avoid the conclusion that the aggregate of the remarks by the district attorney in the instant case

was of such a nature as to deprive the appellant of a fair trial." *Id.* 479 Pa. at 59–60, 387 A.2d at 833 (footnote and citations omitted). *See also Commonwealth v. Hickman,* 319 Pa.Super. 261, 466 A.2d 148 (1983) (new trial mandated where cumulative effect of the district attorney's remarks so prejudiced the defendant that a fair trial was impossible); *Commonwealth v. Reynolds,* 254 Pa.Super. 454, 386 A.2d 37 (1978) (reversible error exists where the cumulative effect of improper statements made by the prosecuting attorney so prejudices the jury as to prevent a fair trial).

■ The second issue raised by the appellant is whether the evidence presented by the Commonwealth is sufficient to sustain the verdict. Here, the evidence in the record, read in light most favorable to the Commonwealth, refutes appellant's contention that the evidence was insufficient to prove intent and malice aforethought. The testimony establishes that the appellant knew the force and instrument used (a purse strap) were likely to kill and the trial court could properly infer the requisite intent from the circumstances and use of the instrument. *See Commonwealth v. Clark,* 270 Pa.Super. 441, 411 A.2d 800 (1979) (malice may be shown by the defendant's use of a dangerous instrument on a vital part of the victim's body). However, this finding of sufficiency does not disturb our conclusion that the appellant is entitled to a new trial on the grounds of prosecutorial misconduct. *Cf. Commonwealth v. Swift,* 291 Pa.Super. 90, 435 A.2d 234 (1981).

The judgment of sentence is reversed and the case remanded for a new trial. Jurisdiction is relinquished.

OLSZEWSKI, J., files dissenting opinion.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent from the majority's opinion granting appellant a new trial. I would affirm the judgment of sentence.

The court, sitting as the trier of fact, is presumed to be able to ignore inflammatory evidence or impermissible argu-

ment. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Glover,* 266 Pa.Super. 531, 405 A.2d 945 (1979). The majority acknowledges the court's detachment, yet in this case holds that the statements at issue were so prejudicial as to overcome that detachment.

Merely because prosecutorial statements are "highly emotional" does not mean they should be presumed to prejudice the court. I would require the appellant to show the prejudicial effect of inflammatory evidence or impermissible argument, evidenced by statements made by the court, before granting a new trial in cases such as the one at bar. Accordingly, since appellant has not shown such an effect, I would affirm the judgment of sentence.