J-A02016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
CAITLIN MARIE PHILLIPS BAILEY   :
  :
Appellant   :   No. 1761 WDA 2019

Appeal from the Judgment of Sentence Entered November 1, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000258-2018

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

CONCURRING MEMORANDUM BY BOWES, J.:      **FILED: June 10, 2021**

Although I am constrained to concur in the Majority's holding that the

Commonwealth did not abuse its discretion in denying Appellant's request for

accelerated rehabilitative disposition ("ARD"), I write separately to note my

concern regarding the actions of District Attorney Marjorie Joan Fox, Esquire.[1]

At the outset, I note that "[a]s an officer of the court and instrument of

the criminal justice system, the prosecutor's duty is to seek justice, not simply

convictions." *Commonwealth v. Clancy*, 192 A.3d 44, 59 (Pa. 2018). More

pointedly, a district attorney "represents the Commonwealth, and the

Commonwealth demands no victims. It seeks justice only, equal and impartial

justice, and it is as much the duty of the district attorney to see that no

---

[1] Marjorie Joan Fox, Esquire, retired as District Attorney of Greene County at the end of her term on January 6, 2020. *See* Petition to Withdraw as Counsel, 12/30/19, at ¶ 2.

innocent [person] suffers as it is to see that no guilty [person] escapes. Hence, [she] should act impartially." ***Commonwealth v. Toth***, 314 A.2d 275, 278 (Pa. 1974). Where a district attorney yields to "hot zeal" by improperly seeking to influence the outcome of a case, he or she is "no longer an impartial officer," but a "heated partisan." ***Id***.

The events in this case began on June 14, 2018, when Appellant called the Pennsylvania State Police ("PSP") to report a "domestic dispute occurring inside her vehicle with her husband." Affidavit of Probable Cause, 6/14/18, at 1. Although that altercation ended without police intervention, Appellant arrived at the PSP barracks in Waynesburg, Pennsylvania, shortly thereafter. She was arrested upon suspicion of driving under the influence ("DUI"). Trooper Robert A. Dittrich testified that he learned about Appellant's outstanding warrant in West Virginia contemporaneously to her arrest. ***See*** N.T. Trial, 9/24/19, at 31-32, 54. The PSP immediately contacted authorities in West Virginia, who stated that they did **not** want Appellant to be detained for extradition in relation to the May 2015 *capias*. ***Id***. at 32-33.

Trooper Dittrich's testimony also established that the PSP shared West Virginia's non-extradition position with the District Attorney's office in two October 2018 emails. ***Id***. at 40-41. At a January 15, 2019 hearing on Appellant's Pennsylvania charges, the issue of Appellant's outstanding warrant came up and Appellant's attorney represented that West Virginia remained uninterested in extraditing Appellant. ***Id***. at 52 ("[Appellant's attorney] indicated to the Court that apparently West Virginia did not want her.").

Shortly after that hearing, DA Fox directed her office to contact authorities in West Virginia concerning Appellant's still-pending charges. *Id*. DA Fox would not directly respond to questions concerning whether she had spoken with anyone from West Virginia concerning Appellant's case, nor could she offer any description of what the substance of those communications might have been. *Id.* at 53. Rather, she would only speculate: "If [West Virginia] said they wanted to have her extradited, she would have been arrested as a matter of course as a fugitive." *Id*.

While its precise substance is unknown, the **effect** of DA Fox's *ex parte* communication with West Virginia is quite clear from the certified record. The next evening, January 16, 2019, a uniformed officer of the PSP arrived at Appellant's residence and took her into custody her pursuant to 42 Pa.C.S. § 9134, which relates exclusively to arrest prior to extradition. **See** Affidavit of Probable Cause, 1/16/19, at 1. The *capias* supporting Appellant's requisition arrest was the same one that West Virginia had issued nearly four years earlier in May 2015. **See** N.T. Trial, 9/24/19, at 54. Appellant was incarcerated for two days before securing bail.

Troublingly, Appellant's purported extradition to West Virginia never took place. At a preliminary hearing held less than a week later, Appellant indicated that she was already in the process of addressing the charges in West Virginia at the time of her arrest. **See** Order, 1/22/19, at 1. By February 13, 2019, the Commonwealth had been provided with "proof" that Appellant had submitted to process in West Virginia. Order, 2/13/19, at 1. While noting

that Appellant "still has unresolved issues in the State of West Virginia," the trial court similarly concluded in March 2019 that "the lack of resolution is **not** attributable to [Appellant]." Order, 3/4/19, at 1 (emphasis added). Ultimately, the Commonwealth vacated the requisition charge after West Virginia declined to take any action for six months. *See* Order, 6/3/19, at 1.

As a general matter, the Commonwealth has a duty to cooperate with our sister jurisdictions in extraditing fugitives from justice pursuant to the Uniform Criminal Extradition Act. *See* 42 Pa.C.S. §§ 9121-48. However, purview over matters related to extradition has been statutorily assigned to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9123 ("[I]t is the duty of the Governor of this Commonwealth to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this Commonwealth."). The local district attorneys of Pennsylvania's counties have no direct involvement in the process, as DA Fox's own testimony acknowledges. *See* N.T. Trial, 9/24/19, at 51-52. Thus, it is entirely unclear to me why DA Fox saw fit to involve her office in out-of-state matters over which she had no direct jurisdictional concern or authority.

It beggars belief that West Virginia would request Pennsylvania's assistance in extraditing Appellant as a putative fugitive, but then sit on their hands for one-half of a year. Stranger still, Appellant's unchallenged pre-trial testimony indicates that she was already in the process of addressing this

outstanding charge at the time of her sudden detention in Pennsylvania.[2] **See** N.T. Trial, 9/24/19, at 61 (Appellant testifying that her West Virginia attorney had contacted authorities concerning her outstanding charge "prior to January 16, 2019."). I emphasize that the contrived arrest of Appellant for requisition has direct bearing upon the instant appeal concerning the Commonwealth's denial of ARD. As DA Fox explained during her pre-trial testimony: "The fact that [Appellant] refused and declined to – to submit herself to the authorities in West Virginia and continues to have an unresolved [DUI] charge in West Virginia, in my opinion, made her not a good candidate for an [ARD] recommendation." **Id**. at 69.

DA Fox attempted to distance herself from Appellant's fruitless detention. **Compare** N.T. Trial, 9/24/19, at 49 ("I recall appearing before the Court when the issue of [Appellant's] nonreporting in West Virginia was raised and [her attorney] said they apparently . . . don't want her so then inquiry was made and apparently, they did.") **with id**. at 70 ("There's nothing to suggest that I have any animus towards her or anything that – and I did not – I did not force West Virginia to say they wanted her as a fugitive."). However, I do not view it as mere coincidence that Appellant was arrested within twenty-four hours of the Greene County District Attorney's office reaching out to West Virginia.

_____

[2] Documentation from West Virginia confirms that proceedings in Appellant's case there were underway in January 2019.

- 5 -

Nonetheless, our Supreme Court has endowed the district attorneys with extraordinary discretion in the context of ARD recommendations:

> The decision to submit a case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD "wholly, patently and **without doubt unrelated** to the protection of society or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit it for ARD consideration based on his view of what is most beneficial for society and the offender."

*Commonwealth v. Sohnleitner*, 884 A.2d 307, 313 (Pa.Super. 2005) (emphasis in original) (quoting *Commonwealth v. Lutz*, 495 A.2d 928, 935 (Pa. 1985)). Thus, "[a] district attorney may base a decision to grant or deny admission to ARD on **any** consideration related to the protection of society and the rehabilitation of the defendant." *Id*. (emphasis in original).

Appellant ultimately admitted that she had failed to appear while out on bond with regard to her West Virginia charges. *See* N.T. Trial, 9/24/19, at 61-62. DA Fox interpreted this oversight as an indication that Appellant would not fare well in ARD. *Id*. at 69 ("She skipped bail on this charge. That does not bode well for someone completing the ARD program."). This reasoning does not constitute an abuse of discretion.

However, this case is deserving of only the barest of affirmances. DA Fox's actions in seeking to ensure Appellant's arrest as a fugitive under dubious circumstances smacks of gamesmanship. Not only was requisition contrary to West Virginia's stated opposition to extradition, it was entirely

unnecessary given Appellant's submission to that state's process. Tellingly, the only appreciable effect of Appellant's requisition arrest was to grant DA Fox an advantage in the plea negotiations in the above-captioned case, *i.e.*, by bolstering her refusal to recommend an ARD disposition. I believe that DA Fox skirted a line and failed to wield the power of her office with appropriate restraint. It is deeply distressing that she sought to exert influence over an out-of-state proceeding and, thereby, gained advantage in a domestic matter.

The true injustice here is that Appellant was subjected to needless incarceration brought about by bureaucratic whim. Given the fraught procedural history of Appellant's West Virginia case and its uncertain status, prudent caution would have served DA Fox much better.[3]

I concur.

---

[3] *See*, *e.g.*, *Stull v. Reber*, 64 A. 419, 421 (Pa. 1906) ("[I]t is an old and sound maxim that an ounce of prevention is worth a pound of cure.").